DONALD C. CILLEY, JR. *v.* HAROLD LAMPHERE ET AL.
(13133)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and SANTANIELLO, Js.

Argued October 7, 1987—decision released January 19, 1988

*John C. Driscoll,* with whom, on the brief, was *Lewis C. Maruzo,* for the appellant (plaintiff).

*Joseph C. Morelli,* for the appellees (defendants).

SANTANIELLO, J. The plaintiff, Donald C. Cilley, Jr., a patrolman for the city of Norwich, brought this action against Richard Podurgiel, Norwich director of personnel, Harold Lamphere, Norwich fire chief, and Charles Whitty, Norwich city manager. This matter arose out of the defendant Podurgiel's refusal to comply with the plaintiff's request that he be transferred from the Norwich police department to the Norwich fire department. In the plaintiff's complaint, he seeks a writ of mandamus ordering the defendants to obey and implement the decision of the Norwich personnel and pension board (hereinafter board), which ordered the transfer of the plaintiff to a position in the fire department of the city of Norwich. The trial court denied the writ of mandamus, holding that the board did not have jurisdiction to order the transfer. The plaintiff has appealed from the judgment of the trial court. We find no error.

The trial court,[1] in its memorandum of decision, made the following findings of fact and conclusions of law: On March 2, 1981, and June 9, 1981, the plaintiff requested a transfer to a position in the Norwich fire department. Both transfer requests were rejected. On April 17,

---

[1] The plaintiff first brought this action in December, 1982. On September 12, 1983, the trial court, *Goldstein, J.,* denied the plaintiff's request for a writ of mandamus. See *Cilley* v. *Lamphere,* Superior Court, judicial district of New London, Docket No. 72057S (September 13, 1983). The plaintiff appealed the decision to the Appellate Court which dismissed the appeal. On December 30, 1985, the plaintiff brought an identical action (this action). On August 12, 1986, the court, *Norko, J.,* denied the plaintiff's request for a writ of mandamus. Judge Norko adopted Judge Goldstein's decision of September 12, 1983, as his own. See *Cilley* v. *Lamphere,* Superior Court, judicial district of New London, Docket No. 082429 (August 12, 1986). Since Judge Norko adopted Judge Goldstein's decision as his own, references made to the trial court decision in this opinion are to Judge Goldstein's memorandum of decision.

1982, the plaintiff complained to the board that his name had not been included on the transfer list. The board voted, on May 18, 1982, to place the plaintiff on the transfer list to the fire department. Although the fire chief was willing to accept the plaintiff, on July 20, 1982, the police chief objected to the transfer because of the personnel needs of the police department. Even though the police chief objected, the board, on October 4, 1982, voted to transfer the plaintiff to the fire department. The defendant Podurgiel has refused to comply with the decision of the board, and the plaintiff brought this mandamus action, which was denied by the trial court.

The plaintiff argues in his appeal that the court (1) erred in concluding that the board had neither the power nor the jurisdiction to resolve the plaintiff's appeal, and (2) abused its discretion in refusing to grant the plaintiff's request for mandamus.

I

The plaintiff first claims that the trial court erred in holding that the board did not have the power or jurisdiction to order the transfer of the plaintiff from the police department to the fire department. The plaintiff claims that the board's power to order transfers derives from one of three sources: Merit System Rule VIII, § 3; Merit System Rule XIII, § 2; and chapter XIV, § 4, of the Norwich city charter.

Transfers of employment are governed by the Norwich city charter and the Norwich merit system rules. Chapter XIV, § 5, of the Norwich charter provides: "[t]he rules adopted in accordance with the provisions of this chapter shall have the force and effect of law. Among other things they shall provide for . . . transfer of employees within the classification plan . . . ."[2]

---

[2] Chapter XIV, § 5, of the Norwich city charter provides: "RULES OF THE PERSONNEL AND PENSION BOARD.

"The rules adopted in accordance with the provisions of this chapter shall

The rules adopted pursuant to chapter XIV, § 5, of the Norwich city charter are known as the merit system rules. Rule VIII, § 3, of the merit system rules, which relates specifically to transfers, provides that the director of personnel must "contact the heads of the departments in which employees requesting transfer are employed and ascertain whether or not any of these employees are *available* for temporary or permanent transfer according to the needs. . . . If the employees so referred are rejected by the department head *or if no employees are available for transfer,* the Director of Personnel will proceed to fill the vacancy according to the regular certification procedure outlined in section 4 of this rule. . . ."[3] (Emphasis added.)

When language used in a statute is clear and unambiguous, its meaning is not subject to modification or

have the force and effect of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment; the establishment, maintenance, consolidation and cancellation of eligible lists; administration of the classification plan and the pay plan and methods of promotion and the application of service ratings thereto, probationary periods of employment; transfer of employees within the classification plan, hours of work, vacations, sick leaves and other leaves of absence; overtime pay; the order and manner in which lay offs shall be effected; suspensions and dismissals and appeals therefrom; and such other rules as may be necessary to provide an adequate and systematic procedure for handling the personnel and pension affairs of the city."

[3] Norwich Merit System Rule VIII, § 3, provides: "TRANSFERS. Employees wishing to be transferred to a position in the same class in another department shall so notify the Director of Personnel in writing who shall maintain suitable lists of such employees. The regular procedure for transfer of such employees will be as follows: When a vacancy occurs, the Director of Personnel will survey the transfer list and contact the heads of the departments in which employees requesting transfer are employed and ascertain whether or not any of these employees are available for temporary or permanent transfer according to the needs. If employees are available and the department heads involved are willing to accept the transfer, the Director of Personnel will notify the head of the department where the vacancy exists by forwarding a list of names of employees who appear on the appropriate transfer list. The department head will interview the employee referred

construction. *Seals* v. *Hickey,* 186 Conn. 337, 346, 441 A.2d 604 (1982). The language used in Rule VIII, § 3, is clear and unambiguous. According to the rule, if a department head states that the needs of the department are such that the employee is not available for transfer, then the director of personnel must fill the vacancy according to the regular certification procedure. The rule does not give the director of personnel, or the board, the power to review and overrule the decision of the department head. The board has the authority to grant transfers *excepting* when the department head vetoes a transfer for reasons of department needs. Accordingly, the trial court did not err in holding that the board did not have the jurisdiction under Merit System Rule VIII, § 3, to overrule the chief of police and transfer the plaintiff to the fire department.

The plaintiff argues nonetheless that pursuant to Merit System Rule XIII, § 2, the board has jurisdiction to decide the plaintiff's appeal regarding his requested transfer.[4] An administrative body " ' "must act strictly

to him and if he finds one or more satisfactory to him, he will make the appointment and notify in writing the employee and the Director of Personnel. If the employees so referred are rejected by the department head or if no employees are available for transfer, the Director of Personnel will proceed to fill the vacancy according to the regular certification procedure outlined in section 4 of this rule. No person shall be transferred to a position for which he does not possess the minimum qualifications."

[4] Norwich Merit System Rule XIII, § 2, provides: "COMPLAINTS AND GRIEVANCES OTHER THAN THOSE RELATING TO SUSPENSIONS, DEMOTIONS OR DISMISSALS. Complaints which involve suspensions, demotions or dismissals shall be handled by the Personnel Board as provided in Section 3 of this rule. All other complaints and grievances which an employee may have because of any action affecting his status or conditions of employment shall be handled as follows:

"(a) The grieved employee and/or representative shall take up his grievance with his immediate supervisor who will take the necessary steps to adjust the complaint if it is in his power to do so.

"(b) If the immediate supervisor is unable or unwilling to adjust the grievance, the grievance should be put into writing and sent to his division or department head with a copy to the Department of Personnel. The depart-

within [its] statutory authority, within constitutional limitations, and in a lawful manner." ' " *Lundy Electronics & Systems, Inc.* v. *Tax Commissioner,* 189 Conn. 690, 694, 458 A.2d 387 (1983); *Waterbury* v. *Commission on Human Rights & Opportunities,* 160 Conn. 226, 230, 278 A.2d 771 (1971). Rule XIII, § 2, provides that the board shall have the power to review decisions of the director of personnel relating to complaints and grievances that an employee may have because of any action affecting his status or condition of employment. As previously stated, under Merit System Rule VIII, § 3, it is the department head, and not the director of personnel, who determines the needs of his department and thus whether an employee is available for transfer. Rule XIII, § 2, gives the board the power to review decisions of the director of personnel, but the rule does not give the board the power to review the decisions of department heads. Accordingly, the court did not err in holding that the board had neither the power nor jurisdiction to decide the plaintiff's appeal pursuant to Merit System Rule XIII, § 2.

The plaintiff finally argues that pursuant to chapter XIV, § 4, of the Norwich city charter, the board has

ment or division head will discuss the grievance with the employee and his representatives if any, and attempt to adjust the problem if it is within his power to do so. The division or department head will reduce his finding in the case to writing and advise the employee and the personnel department of his decision in the case.

"(c) Should the employee still be grieved he should apply in writing to the Director of Personnel stating the reasons for his grievance, including all pertinent facts of the case.

"(d) Within ten days after receiving the complaint, the Director of Personnel shall call a meeting which shall include the department head, the complainant and representatives of his own choosing, and any other person or persons involved in the complaint. The Director of Personnel shall preside at the meeting and hear the entire case to obtain all of the facts.

"(e) The Director of Personnel shall make a complete report of his findings and render a decision to the employee and the department head in writing.

"(f) The Personnel Board may review the decision of the Director of Personnel and its decision shall be final."

jurisdiction to decide the plaintiff's appeal regarding his transfer.[5] " 'It is well established that a city's charter is the fountainhead of municipal powers. . . .' " *Lombardi* v. *Bridgeport,* 194 Conn. 601, 604, 483 A.2d 1092 (1984). "The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983). Agents of a city, including commissions, have no source of authority beyond the charter. *Perretta* v. *New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981). When a charter is construed, the rules of statutory construction generally apply. *Arminio* v. *Butler,* 183 Conn. 211, 217, 440 A.2d 757 (1981). Common sense must be used in construing a statute. *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 196, 491 A.2d 1058 (1985).

Chapter XIV, § 4, of the Norwich city charter provides that it shall be the duty of the board "[t]o hear appeals from any action pertaining to classification, reclassification and allocation of positions and from any disciplinary action . . . ." The plaintiff argues that a denial of his transfer is an action that pertains to allo-

[5] Chapter XIV, § 4, of the Norwich city charter provides: "POWERS AND DUTIES OF THE PERSONNEL AND PENSION BOARD.

"It shall further be the duty of the personnel and pension board: (a) To hear appeals from any action pertaining to classification, reclassification and allocation of positions and from any disciplinary action suspending, reducing or removing any officer or employee in the classified service as hereinafter provided, and to report in writing to the officer taking the action appealed from, its findings and decisions therein; (b) to consider the rules recommended by the director of personnel and to adopt or amend the same but only after public hearing thereon of which at least five days' notice shall be given by advertisement once in a daily newspaper of general circulation in the city; (c) to adopt or amend the classification plan recommended by the director of personnel; (d) to investigate any or all matters relating to conditions of employment in the city service and to make at least annually a report of its findings to the council; (e) to administer retirement funds as hereinafter set forth."

cation of positions, and thus the board has the jurisdiction to hear his appeal. The trial court held that chapter XIV, § 4, of the Norwich city charter does not apply to transfers.

This court has hereinbefore held pursuant to chapter XIV, § 5, of the Norwich city charter, and Merit System Rule VIII, § 3, and Rule XIII, § 2, that the board does not have the power or jurisdiction to review decisions of department heads as to the needs of the department and the availability of an employee for transfer. Chapter XIV, § 4, of the Norwich city charter does not give the board any broader powers to review decisions of department heads with respect to the availability of an employee for transfer. Accordingly, the trial court did not err in holding that chapter XIV, § 4, of the Norwich city charter does not give the board jurisdiction to decide the plaintiff's appeal.

## II

The plaintiff's final claim of error is that the trial court abused its discretion in refusing to grant the plaintiff mandamus relief to effectuate the final decision of the board. The writ of mandamus is designed to enforce a plain positive duty, upon the relation of one who has a clear legal right to have it performed, and where there is no other adequate remedy at law. *Juliano* v. *Farrell,* 196 Conn. 283, 286, 492 A.2d 187 (1985). "The issuance of the writ rests in the sound discretion of the court." *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* supra, 740. In light of the trial court's holdings that the board was bound by the Norwich city charter and the merit system rules, it concluded that to grant the plaintiff's request under the circumstances of this case would be a misuse of mandamus. We find that the plaintiff has failed to establish that he has a clear legal right to be transferred, and therefore, the trial court did not err in denying the plaintiff's request for mandamus.

There is no error.

In this opinion PETERS, C. J., HEALEY and CALLAHAN, Js., concurred.

SHEA, J., dissenting. In affirming the trial court's conclusion that the Norwich personnel and pension board (board) lacked jurisdiction to decide the plaintiff's appeal and thus to order his transfer to the fire department, the majority opinion takes a much narrower view of the scope of the grievance procedure available to city employees than justified by the language of the merit system rules establishing that procedure. Rule XIII, § 2, of the Norwich merit system rules, provides that "[a]ll other complaints and grievances [i.e., those not involving suspensions, demotions or dismissals] which an employee may have because of any action affecting his status or conditions of employment shall be handled" under the prescribed grievance procedure that culminates in a decision of the director of personnel, which "[t]he Personnel Board may review . . . and its decision shall be final."[1] The plaintiff's claim that the chief of police had arbitrarily refused to consent to his transfer to the fire department certainly constituted a complaint or grievance falling within this jurisdictional grant, because that refusal was an "action affecting his status or conditions of employment." The result of the refusal is that he must remain a policeman instead of changing his "status or conditions of employment" to those of a fireman.

The majority declines to follow the plain intention of the merit system rules to vest in the board the final authority to resolve all employee grievances, because it views the decision of the board ordering the transfer in the face of the police chief's opposition as contrary to the provisions of the merit system rules

---

[1] See footnote 4, supra, of the majority opinion.

relating to transfers. Whether the board has erred in applying or interpreting these rules is immaterial in deciding whether the plaintiff's dispute with the police chief falls within the board's jurisdiction. The provision that a decision of an administrative agency "shall be final" precludes any review of the merits of that decision. "The power of the [agency] to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute." *Bailey* v. *Mars,* 138 Conn. 593, 601, 87 A.2d 388 (1952). " '[W]here a court or administrative body is dealing with a controversy of the kind it is authorized to adjudicate, and has the parties before it, it has jurisdiction. And jurisdiction does not depend upon the regularity of the exercise of its power or the correctness of decisions made.' " *Thermoid Western Co.* v. *Union Pacific R. Co.,* 12 Utah 2d 256, 259, 365 P.2d 65 (1961), quoted with approval in *State* v. *Tedesco,* 175 Conn. 279, 286, 397 A.2d 1352 (1978). The reliance of the majority upon the circumstance that the board may have applied the merit system rules erroneously indicates a confusion between the incorrect exercise of jurisdiction and the lack thereof. See *Meinket* v. *Levinson,* 193 Conn. 110, 115, 474 A.2d 454 (1984).

The majority construes § 2 of the Merit System Rule XIII not to "give the Board the power to review the decisions of department heads." No effort has been made to justify textually or otherwise this narrow interpretation of the grant to the board of authority to review decisions of the director of personnel upon complaints or grievances of an employee "because of *any* action affecting his status or conditions of employment." (Emphasis added.) Such a construction effectively nullifies the grievance procedure established by rule XIII, § 2, because subparagraphs (b), (c), (d) and (e)[2] indicate that the department head must first decide

---

[2] See footnote 4, supra, of the majority opinion.

a grievance of any employee within his department before the personnel director "shall make a complete report of his findings and render a decision to the employee and the department head in writing." Thus it is clear that all grievances which are the subject of a decision by the personnel director must first have been decided by a department head. Under the position taken in the opinion that the board has no power to review a decision of a department head even though that decision has later been reviewed by the personnel director and thus has become his decision, the board would be effectively deprived of all jurisdiction in these grievance matters falling within the ambit of rule XIII, § 2, of the merit system rules.

Accordingly, I dissent from this virtual gutting of the grievance procedure established by the merit system rules, which the majority opinion has achieved.