BRIDGEPORT HYDRAULIC COMPANY *v.* DEPARTMENT OF PUBLIC UTILITY CONTROL ET AL.

SUPERIOR COURT        JUDICIAL DISTRICT OF        FILE NO. 373433
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed August 26, 1991

*Day, Berry & Howard,* for the plaintiff.

*Robert S. Golden, Jr.,* and *Tatiana D. Sypko,* assistant attorneys general, and *Richard Blumenthal,* attorney general, for the named defendant.

*Richard F. Webb,* assistant attorney general, for the defendant commissioner of environmental protection.

*Valerie Bryan,* for the defendant office of consumer counsel.

*Arthur A. Hiller,* for the defendant town of Trumbull.

KOLETSKY, J. This is an appeal from a decision by the defendant department of public utility control (DPUC) allocating to utility customers and shareholders a portion of the economic benefits from the sale of approximately ninety-five acres of land previously owned by the plaintiff utility, Bridgeport Hydraulic Company (company). The DPUC took this action based on its conclusion that General Statutes § 16-43 (d) authorized the allocation.

The plaintiff has appealed raising the following three claims: (1) § 16-43 (d) does not apply to the sale of this land because the land was never "at any time . . . in the water company's rate base"; (2) the DPUC is bound by doctrines of res judicata and collateral estoppel to treat the proceeds from the ninety-five acre parcel in the same manner as the DPUC treated the proceeds from a fifteen acre parcel in a 1978 DPUC decision; and (3) the DPUC, in allocating benefits between ratepayers and shareholders, did not "equitably" allocate those benefits.

The relevant facts surrounding the DPUC decision that is the subject of this appeal are as follows. Sometime between 1876 and 1878, the plaintiff purchased a 110 acre parcel of property. The present appeal deals with approximately ninety-five acres of this 110 acre

parcel. The other fifteen acres were sold in the 1970s and were the subject of a portion of a 1978 DPUC decision.

The 110 acres were "used and useful" during the period between the purchase of the property and 1916. In 1916, the entire 110 acre parcel, including the approximately ninety-five acres now in question, was abandoned for the purpose of utility service. From that time on, the actual monetary support of this property by ratepayers has been minimal.

The 1978 DPUC rate-making decision rendered in response to the application by the plaintiff previously mentioned, encompassed treatment of the benefits received from a 1977 condemnation of a fifteen acre portion of the 110 acre parcel. In that 1978 decision the DPUC determined that the benefits received from the condemnation of the fifteen acres should "properly be recorded below the line . . . and will not be reflected as revenue from utility operations in this case." This holding of the agency was based on the review of a 1926 proceeding before the defendant's predecessor agency and by the finding of the agency that "it would be difficult to establish with any certainty that the specific subject land (related to the below the line gains) was in fact employed in utility service at that time. In fact, it appears clear commission policy was that any property included in the valuation upon which a return would be allowed must be used and useful in utility service."

In September, 1989, the plaintiff submitted an application to the DPUC pursuant to title 16 of the General Statutes and DPUC regulations, seeking DPUC approval to sell 382 acres of unimproved company property to both the town of Trumbull and the state department of environmental protection for $9,275,000. This 382 acre parcel included the ninety-five acres remaining from the 110 acre parcel described above.

All required notices were given, hearings were held in November, 1989, and, in December, 1989, the DPUC issued its decision approving the sale. In this decision the DPUC found that all but 94.76 acres, or 24.8 percent of the entire 382 acre parcel, had never been "in service" or "used and useful." The DPUC then applied the 24.8 percent to the net after tax gain of $6,594,000 and found that $1,635,000 was the amount of monetary benefit that was proportionate to the amount of land that had been "used and useful." The DPUC then decided that § 16-43 (d) applied to the $1,635,000. The reasoning was as follows: "Conn. Gen. Stat. Section 16-43 (c) provides, in pertinent part, that: 'Any water company selling land . . . shall use the net proceeds from the sale of such land for capital projects which improve or protect the water supply system or for the acquisition of land to protect a water supply source.' The statute does not distinguish between the types of land being sold. Therefore the net proceeds from the sale of any water company land must be used for the specified purposes.

"Conn. Gen. Stat. Section 16-43 (d) provides that: 'For the purposes of rate making, the department shall use an accounting method for the economic benefits of sales of class III land, as defined in section 25-37c, that at any time has been in the water company's rate base that equitably allocates all of the economic benefits of any such sale between the ratepayers and the shareholders of the company. . . . [T]he department may . . . allocate all of the economic benefits of [the net proceeds] to either the ratepayers or the shareholders.

"The Authority notes that the concept of rate base regulation originated after the property that is the subject of this docket was removed from plant in service. However, the Authority interprets 'land . . . that at any time has been in the water company's rate base'

to mean any land that was used and useful in those instances, such as we have here, where the property was in service prior to the concept of rate base regulation. The Authority has determined that the fact that land that was used and useful prior to the concept of rate base regulation, but which was not used as a component of rate base regulation, goes to the question of determining equitable sharing as opposed to whether the proceeds from the sale of such land should be removed from the operation of Conn. Gen. Stat. Section 16-43 (d) altogether. The Authority does not believe that the Legislature intended for the proceeds from the sale of all property retired from use prior to the concept of rate base regulation to inure entirely to the benefit of the shareholders without considering the equities of each sale.''

After finding that § 16-43 (d) applied to the net proceeds of the ninety-five acres, the DPUC considered a variety of factors and made an allocation of 75 percent of the benefits from the sale of the ninety-five acres to ratepayers and 25 percent of those benefits to shareholders.

A timely appeal was taken by the plaintiff in accordance with General Statutes § 16-35, which requires appeals to be in accordance with the provisions of General Statutes § 4-183. The required bond is appended to the appeal and service on all necessary persons was properly made.

The necessary aggrievement on the part of the plaintiff has been properly pleaded and is obvious on the face of the record. The appeal is thus properly before this court.

The scope of judicial review of administrative appeals from the decision of the DPUC is set forth in § 4-183. *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 219 Conn. 51, 55, 591 A.2d 1231 (1991). ''Judicial review of [DPUC] decisions may not

extend beyond the administrative record." *Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority,* 183 Conn. 128, 133–34, 439 A.2d 282 (1981).

"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Id., 639–40. "Such a standard of review allows less room for judicial scrutiny than does the weight of the evidence rule or the clearly erroneous rule." (Internal quotation marks omitted.) Id., 640.

The seminal issue in this appeal is the interpretation of § 16-43 (d). If that statute does not apply to the benefits from the sale of the ninety-five acres, the agency has no authority to make an allocation of benefits between ratepayers and shareholders under that statute, and the agency made no claim in oral argument or in its brief that there was any other source of authority to make such an allocation.

"[T]he interpretation of statutes is ultimately a question of law . . . ." (Citation omitted.) *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986). " 'Judicial review of the conclusions of law reached administratively is . . . limited.' " Id. "[I]t is the well established practice of this court to 'accord great deference to the construction given [a] statute by the agency charged with its enforcement.' " Id.; see *Lieberman* v. *Board of Labor Relations,* 216 Conn. 253, 263, 579

A.2d 505 (1990). This maxim, however, ordinarily applies in cases where the statutory language is ambiguous, the legislative history unenlightening, and the "governmental agency's time-tested interpretation is reasonable." (Internal quotation marks omitted.) *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 634, 481 A.2d 755 (1984). "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction." *Cilley* v. *Lamphere,* 206 Conn. 6, 9–10, 535 A.2d 1305 (1988). Where, however, "the wording of the statute is unclear, the legislative intent must be ascertained by examining the language of the statute, its legislative history and the purpose the statute is to serve." *Zachs* v. *Groppo,* 207 Conn. 683, 690, 542 A.2d 1145 (1988).

The court notes that subsections (c) and (d) of § 16-43 were enacted in 1988, and, as far as the court can determine, there is no meaningful legislative history nor has there been a previous agency interpretation of § 16-43 (d). The construction of a statute on an issue that has not previously been subjected to judicial scrutiny is a question of law on which an administrative ruling is not entitled to special deference. *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987). Furthermore, no administrative or regulatory body can modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power. *Breen* v. *Department of Liquor Control,* supra.

The plaintiff takes the position that the phrase in § 16-43 (d) "land . . . that at any time has been in the water company's rate base" is a limitation that means that the statute authorizes the agency to allocate the net proceeds of sales from land that has been included in "above the line" accounting under the system in use since 1942. The agency and the office of consumer counsel both argue that the phrase is an expansion rather

than a limitation of agency authority and further that, with respect to this particular parcel of land, a review of 1920s documents shows that this land was included in a "rate base" from which the company attempted to get a reasonable rate of return in proceedings before the regulatory agencies of the time.

The problem with the agency's interpretation of the statute, however, is that the agency itself has determined, in the very decision that is now being appealed, that this parcel of land "was used and useful prior to the concept of rate base regulation, but . . . was not used as a component of rate base regulation." Thus, even under the agency's initial position, more is required. This the DPUC attempts to supply by arguing that any land that was "used and useful" at any time falls within the ambit of § 16-43 (d). This interpretive addition is necessary to distinguish between land that was in utility service at any time and land that was not, since a review of the record before the agency indicates to the court that "rate base" as the term was used in the 1920s included not just real estate used for delivery of water to customers, but all real estate (and indeed all other assets) owned by the utility. Thus, if the DPUC were to follow logically its expansive interpretation of "rate base" to include any land ever included in the balance sheet by a utility in a rate proceeding, the agency would logically have to include not only the ninety-five acres involved in the present appeal, but would have to include the entire 382 acre parcel involved in the sale. This the DPUC avoids by injecting the "used and useful" criterion. With respect to this ninety-five acres, however, the DPUC focuses on the "at any time language" in § 16-43 (d) and makes the assertion that even though the land was never "used and useful" while it was in rate base, it was at some time "used and useful," albeit before the concept of rate base regulation, and, therefore, subject to the provisions of § 16-43 (d).

If all that is required to subject the proceeds of a land sale to the provisions of § 16-43 (d) is a finding that it was "used and useful" at any time, a utility could purchase the Taj Mahal for the purpose of pumping water from its reflecting pool to its customers, an expenditure that the DPUC would certainly find to be imprudent and that the DPUC would certainly exclude from the rate base of the utility, only to have the DPUC find that the Taj Mahal was "used and useful" and, therefore, gains realized on the sale of the Taj Mahal allocable to ratepayers under § 16-43 (d). It may be that such a result would be an appropriate sanction to impose on a utility that frivolously purchases such an extravagance, but that is not the point.

This court is engaged in the construction of a statute, and the plain meaning of that statute is a point beyond which the court need not venture. With respect to the gain from the sale of the approximately ninety-five acre parcel, the agency itself has determined that the property was not "in service" or "used and useful" at any time subsequent to "the concept of rate base regulation." It is the finding of the court, therefore, that § 16-43 (d) does not apply to this land sale for the reason that the agency decision is based on an erroneous interpretation of the statute, or, in the words of § 4-183 (j), "affected by other error of law . . . ."

The court notes further that the portion of the agency decision quoted earlier in this opinion actually misstates § 16-43 (c). While the legislature in 1988 did indeed enact § 16-43 (c) and (d) substantially as quoted by the agency in its decision, the legislature also amended § 16-43 (c) effective October 1, 1989 (before the decision in the present case), to add the restriction that subsection (c) applied only to land "that at any time has been in the water company's rate base." While not critical to the present case, the court notes that the agency

relied to a considerable extent on the fact that § 16-43 (c) did not restrict its applicability to land that had at any time been in the rate base.

The court also notes that the actions in 1972 by the DPUC's predecessor when the agency attempted to require land sale proceeds to be accounted for "above the line," or for the benefit of ratepayers rather than shareholders, was the subject of considerable litigation. See *Bridgeport Hydraulic Co.* v. *Council on Water Co. Lands,* 453 F. Sup. 942 (D. Conn. 1977), aff'd, 439 U.S. 999, 99 S. Ct. 606, 58 L. Ed. 2d 674 (1978); *Greenwich Water Co.* v. *Hausman,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket Nos. 108038, 117874 and 015775 (May 12, 1979). This litigation upheld the agency's authority to require accounting for the proceeds of land sales in either above the line or below the line account numbers, so long as the agency provided a fair return on the utility's investment. In the years since those decisions the agency has worked through a number of policy changes as to how it would treat land sale revenues. In the context of this history, there can be no doubt that the enactment of § 16-43 (d) can only have been intended by the legislature as a clear and *limiting* statement of the authority of the DPUC to allocate land sale proceeds for the benefit of ratepayers to the exclusion of shareholders. The court also notes the 1990 amendment to § 16-43 (d) providing that a sale of water company land for open space (as is the case with this sale) would now probably be given different treatment by the DPUC. That amendment, however, has no impact on this decision.

The much closer question is whether the contested language in § 16-43 (d), "that at any time has been in the water company's rate base," applies to land removed from service by the company prior to a major amendment to the uniform system of accounts in 1942.

The agency has apparently been going back as far as the 1920s to determine whether § 16-43 (d) applied to a particular land sale. Since the land in question was neither "in service" nor "used and useful" subsequent to the concept of rate base regulation, the court does not need to reach that issue. Had the land in the present case been used and useful in the 1920s, at the time of the company's rate application, the court might well be disposed to find that the statutory language does not apply to land removed from service prior to 1942, but that finding is not necessary to the decision.

Similarly, the court need not reach the issue of res judicata although it notes that the 1978 decision from which preclusive effect is claimed was rendered some ten years before enactment of § 16-43 (d). Likewise, the court declines to decide the issues of res judicata and whether the allocation by the agency was equitable, since the agency had no power to make the allocation in the first place under the court's construction of § 16-43 (d).

For the foregoing reasons the appeal is sustained.