EDWARD BENENSON *v.* BOARD OF REPRESENTATIVES
OF THE CITY OF STAMFORD
(14486)

BULL'S HEAD MEDICAL ASSOCIATES *v.* BOARD OF
REPRESENTATIVES OF THE CITY OF STAMFORD
(14489)

PETERS, C. J., GLASS, COVELLO, BERDON and SANTANIELLO, Js.

778

Argued June 2—decision released August 12, 1992

*Howard C. Kaplan,* for the appellant in the first case (plaintiff Edward Benenson).

*Michael J. Cacace,* for the appellant in the second case (plaintiff Bull's Head Medical Associates).

*James V. Minor,* assistant corporation counsel, with whom, on the brief, was *Daniel M. McCabe,* corporation counsel, for the appellee (defendant).

BERDON, J. The principal issue in these appeals is whether the president of the board of representatives

of the city of Stamford (board) correctly framed the question for the board's vote on a proposed amendment to the zoning regulations of the city of Stamford. During the seven years of litigation involving these cases, this is the second time the parties have been before this court regarding the board's action on this amendment to the regulations. See *Stamford Ridgeway Associates* v. *Board of Representatives,* 214 Conn. 407, 572 A.2d 951 (1990).[1] The president of the board, Sandra Goldstein, after a vote by the board, ruled that the zoning amendment concerning the properties of the plaintiffs, Bull's Head Medical Associates (Bull's Head) and Edward Benenson, was approved.

The plaintiffs and others took an appeal from the board's approval of the zoning amendment to the Superior Court. The court, *Gerety, J.,* sustained the appeal on grounds that are not relevant to this appeal. Upon appeal to this court, we reversed and remanded the cases to the trial court for further proceedings. Id., 443. The plaintiffs, Bull's Head and Benenson, on remand, pursued the issues presented in this appeal before the Superior Court. The court, *Mottolese, J.,* dismissed the appeals. The Appellate Court granted certification for the plaintiffs to appeal, and we transferred their appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 4023.

The plaintiffs are owners of separate parcels of real property in Stamford. On March 11, 1985, the zoning board of the city of Stamford (zoning board), as part

---

[1] This issue, although raised in *Stamford Ridgeway Associates* v. *Board of Representatives,* 214 Conn. 407, 422–23, 572 A.2d 951 (1990), was never reached. The dispositive issue in that case was whether the Stamford charter permitted the board of representatives to vote on separate zone changes contained in one zoning application or whether the board had to act on the entire application. The majority of this court held that the charter permitted the board to vote on each separate zone change encompassed in the application. Id., 432–33.

of a comprehensive rezoning plan for the central business district, voted to rezone the areas in which the plaintiffs' properties were located from zone C-L (limited business district) to the more restrictive zone C-N (neighborhood business district).[2] The plaintiffs and others filed petitions with the zoning board pursuant to § C-552.2 of the Stamford charter[3] objecting to the change of zone, all of which were referred to the board.

The charter gives to the zoning board the power to adopt zoning regulations and to amend the zoning map, but not in such a way as to permit a use "which is contrary to the general land use established for [the] area by the master plan." Stamford Charter § C-552; *Burke*

---

[2] Bull's Head "owns property located at 22 Long Ridge Road. The property was zoned C-L [limited business district]. As part of [the zoning amendments], however, the property was rezoned to C-N (neighborhood business district). The rezoning reduced the plaintiff's property's floor area ratio development potential to approximately 25 percent of what it had been. . . . Benenson owns property in the general area of High Ridge Road south of Oaklawn Avenue and north of Bedford Street, and Long Ridge Road from Cold Spring Road to Bedford Street. It is a 25,450 square foot parcel improved with several retail stores. The property was zoned C-L. As part of [the zoning amendment], however, it was rezoned to C-N. The zone change rendered Benenson's property nonconforming." *Stamford Ridgeway Associates* v. *Board of Representatives,* 214 Conn. 407, 410 n.2, 572 A.2d 951 (1990).

[3] Section C-552.2 of the Stamford charter provides: "After the effective date of the master plan, if the owners of twenty per cent or more of the privately-owned land in the area included in any proposed amendment to the zoning map, or if the owners of twenty per cent or more of the privately-owned land located within five hundred feet of the borders of such area, file a signed petition with the zoning board, within ten days after the official publication of the decision thereon, objecting to the proposed amendment, said decision shall have no force or effect but the matter shall be referred by the zoning board to the board of representatives within twenty days after such official publication, together with written findings, recommendations and reasons. The board of representatives shall approve or reject such proposed amendment at or before its second regularly scheduled meeting following such referral. When acting upon such matters the board of representatives shall be guided by the same standards as are prescribed for the zoning board in section 550 of this act. The failure of the board of representatives either to approve or reject said amendment within the above time limit shall be deemed as approval of the zoning board's decision."

v. *Board of Representatives,* 148 Conn. 33, 35, 166 A.2d 849 (1961). "When the zoning map is amended, the owners of 20 per cent or more of the privately owned land in the area changed or the owners of 20 per cent or more of the privately owned land within 500 feet of the borders of the area may file a petition with the zoning board objecting to the amendment. § [C-552.2]; 26 Spec. Laws 1235." *Burke* v. *Board of Representatives,* supra. Upon the filing of such a petition, the zoning amendment is without effect and the zoning board must refer the matter to the board, along with the zoning board's "written findings, recommendations and reasons" for the change. Stamford Charter § C-552.2; *Burke* v. *Board of Representatives,* supra. The board of representatives, which is composed of two members elected from each of the city's twenty voting districts, acts to approve or reject the amendment. The charter states that any decision on the matter by the board must be by the affirmative vote of a majority of the entire membership of the board. Stamford Charter § C-556.1;[4] *Burke* v. *Board of Representatives,* supra, 36.

The board received a total of sixteen petitions, all of which were filed by property owners who were adversely affected by the proposed rezoning. On May 6, 1985, the board acted on thirteen of the sixteen petitions, which included the plaintiffs' petition. *Stamford Ridgeway Associates* v. *Board of Representatives,* supra, 411.

On each vote, the following procedure was used. A motion was made that the proposed amendment, which was the subject of the petition, be approved. Upon the motion being seconded, the president of the board announced the voting procedure as follows: "The vot-

[4] Section C-556.1 of the Stamford charter provides: "In deciding all matters referred to the board of representatives pursuant to this chapter, the affirmative vote of a majority of the entire membership of said board shall be required."

ing procedure is according to [§§ C-556.1 and C-552.2] of the Charter, as well as Judge Novack's decision of September [9], 1980,[5] 21 votes, either Yes or No to the Motion are needed in order for the Board to take an action. In the absence of 21 votes for or against the Motion, it is deemed that the Board has taken no decision. According to [§ C-552.2], failure to approve or reject shall be deemed approval of the Zoning Board or approval of the Motion, because our motions are all going to be framed in that manner. If you vote for this Motion, you are supporting the Zoning Board's decision. If you vote No to this Motion, you are not supporting the Zoning Board, you are voting against the Zoning Board's decision and for the appeal. All those in favor, vote up for Yes; all those opposed to the Motion vote down for No."

The vote on the zoning amendment concerning the plaintiffs' properties was fifteen votes in favor of the motion approving the amendment, twenty opposed to the amendment, one abstention and two not voting. "The board took no action on [the plaintiffs' petition] because of the lack of majority votes of the entire membership of the board needed on each petition to reject the proposed zone changes. . . . The effect of 'no action' by the board constituted an affirmance of the changes proposed by the zoning board." *Stamford Ridgeway Associates* v. *Board of Representatives,* supra.

The plaintiffs first argue that the questions before the board were improperly framed in that the votes should have been on the petition objecting to the proposed amendment, and not on the zoning amendment itself. They point to § C-556.1 of the charter that requires an "affirmative vote of a majority of the entire membership" of the board in order to decide all matters referred to the board by the zoning board under § C-552.2 of the charter. Because what was referred

[5] See footnote 7, infra.

to the board was the petition, they claim the board president never allowed the petitions to receive an affirmative vote "since those who supported the petitions had to vote in the negative." We disagree.

The plaintiffs misconstrue the plain language of § C-552.2. The question before the board was not the petition, which indicated the property owners' objection to the zone change, but whether the zone change should be approved. The petition was merely the vehicle that brought the issue before the board. This is made clear in § C-552.2, which provides that after the petition is referred to the board the "board of representatives shall *approve or reject such proposed amendment* . . . ." The charter does not provide for the approval or rejection of the "petition" itself. "The manifest legislative intent expressed in the Stamford charter is that the board of representatives, in considering an amendment to the zoning map, shall review the legislative action of the zoning board on that board's written findings, recommendations and reasons. *The question before the board of representatives is whether to approve or to reject the amendment.* That board, in reviewing the action of the zoning board, is called upon to perform a legislative function." (Emphasis added.) *Burke* v. *Board of Representatives,* supra, 39. The plain language of § C-552.2 leaves no room for any other construction. *Stamford Ridgeway Associates* v. *Board of Representatives,* supra, 423–24; see *Norwich* v. *Norwalk Wilbert Vault Co.,* 208 Conn. 1, 9, 544 A.2d 152 (1988) (common sense must be used in construction of a charter); *Cilley* v. *Lamphere,* 206 Conn. 6, 12, 535 A.2d 1305 (1988).[6]

---

[6] Moreover, the procedure used by the board was also entirely consistent with the framing of the question and § C-556.1 of the Stamford charter, which requires an "affirmative vote" of the membership of the board. "Affirmative" has its ordinary meaning; it means that "which declares positively . . . [or] that which establishes . . . ." Black's Law Dictionary (5th Ed.). In other words, an affirmative vote of the majority simply means

The actions of public officials—such as the president and members of the board—are entitled to a presumption in favor of their legality. "Courts will interfere with legislative decisions made by municipalities only where the party seeking review can characterize the legislative act as illegal, fraudulent, or corrupt. . . . When such bodies are acting within the limits of the powers conferred upon them, and in due form of law, the right of courts to supervise, review or restrain is exceedingly limited." (Citations omitted; internal quotation marks omitted.) *Northeast Electronics Corporation* v. *Royal Associates,* 184 Conn. 589, 592, 440 A.2d 239 (1981).

The board members knew the meaning of their vote. The president of the board made the effect of each vote perfectly clear before each vote. Before the vote on the proposed zoning amendment that concerned the plaintiffs, the board had the benefit of earlier explanations by the president on other amendments. Indeed, through those prior votes, they had the opportunity to observe how their vote, one way or the other, would affect the outcome.

The plaintiffs also argue, under a strained interpretation of a trial court's opinion,[7] that the twenty "no"

that which is necessary to establish the vote of the majority of the entire membership of the board. That was exactly the manner in which the president framed the issue. The president made it clear that: (1) a vote "yes" on the motion is a vote in favor of the amendment; (2) a vote "no" on the motion is a vote against the amendment; and (3) the failure to obtain twenty-one "yes" votes (approval of the zoning amendment) or twenty-one "no" votes (rejection of the zoning amendment) would result in the approval of the amendment because of the provision in § C-552.2 of the Stamford charter.

[7] Judge Novack's decision in *Schlesinger* v. *Board of Representatives,* Superior Court, judicial district of Fairfield at Stamford, Docket No. CV-77-0019744-L (September 9, 1980), is entirely consistent with the procedure and decision of the president of the board, the trial court, *Mottolese, J.,* and this court. In *Schlesinger,* the amendments to the zoning regulations were referred to the board as a result of a petition filed pursuant to § C-552.2 of the Stamford charter. At the board meeting, a motion

votes of the forty votes of the board, was enough to overturn the zoning board on the amendment. There is no basis for this claim. Section C-556.1 of the charter requires "the affirmative vote of a majority of the entire membership of said Board . . ." which was twenty-one votes. Section C-552.2 provides that "failure of the board of representatives either to approve or reject said amendment . . . shall be deemed as approval of the zoning board's decision." Read together, as they must be; *Arminio* v. *Butler,* 183 Conn. 211, 218, 440 A.2d 757 (1981); these charter provisions clearly provide that twenty-one "yes" votes operates as approval of the amendment; twenty-one "no" votes operates as defeat of the amendment; and failure to obtain twenty-one "yes" or "no" votes, as in the present case, operates as approval of the amendment.

The judgment is affirmed.

In this opinion the other justices concurred.

---

was made to adopt the zoning change proposed by the zoning board. The vote was thirteen in favor, twenty opposed, one abstention and three members did not participate. The president of the board declared that the proposed amendment was defeated. An appeal was taken. The court *sustained* the appeal, in effect ruling that the amendment to the zoning regulations was approved as a result of the failure to obtain twenty-one "no" votes in accordance with § C-552.2 of the charter.

The confusion in *Schlesinger* arises out of an order entered upon a motion for clarification after the formal opinion had been issued, in which the court instructed the board to reconsider and vote again on the matter. We need not address this supplemental order in *Schlesinger.*