[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs are the owners of a parcel of land located on West Park Place in Stamford. (Complaint ¶ 3; Plaintiffs' Exhibit 1.) The plaintiffs allege that, while the subject property is still vacant land, a site plan has been approved for the development of a 15 story building, which will include 118 residential multi-family units. (Complaint ¶ 4.) The defendants are part of the municipal government in Stamford and have various powers and duties under § C6-30-1 et seq., of the charter, including the power to amend the master plan. (Complaint ¶ 5.) The master plan is the tool for setting Land use policies and guidelines in Stamford. (Return of Record [ROR], Item 3, p. 7).
On December 7, 1999, the planning board held a public hearing to consider a proposed amendment to the master plan, amendment number 367 (amendment), which would serve to change the property designation of property located in the mill river area of downtown Stamford from land use category 5 (residential, multifamily, high density) to land use category 13 (public parks). (Complaint ¶ 12; ROR, Item 2.) The amendment, which is the subject of the present appeal, is an integral part of a comprehensive plan known as the mill river corridor (corridor), which calls for more open space and affordable housing in and around the downtown Stamford area. (ROR, Item 3, pp. 3-4.) The plaintiffs' property CT Page 13231 on West Park Place is located in the corridor and is designated land use category 5. (Complaint ¶ 3, 6; ROR, Item 2, 14, pp. 29-30.) At the hearing, the planning board heard from the plaintiffs' counsel who raised the plaintiffs' concerns as to the effect the amendment may have upon the plaintiffs' property. (Complaint ¶ 13; ROR, Item 14, pp. 30-35.) On January 11, 2000, however, the planning board approved the amendment. (Complaint ¶ 14; ROR, Item 15). The planning board's written decision was dated January 15, 2000. (Complaint ¶ 14; ROR, Item 15).
On January 24, 2000, pursuant to § C6-30-7 of the charter, more than 20 percent of the owners of the land situated in the corridor, which includes the plaintiffs, filed a petition objecting to the amendment. (Complaint ¶ 16, 17; ROR, Item 17, 18, 19.) In accordance with the provisions of this section of the charter, the matter was referred to the board of representatives for consideration. (Complaint ¶ 19; ROR, Item 16, 18, 31.) The land use committee of the board of representatives (committee) held a public hearing on March 1, 2000. (Complaint ¶ 19; ROR, Item 32.) At that hearing, the committee heard from the plaintiffs' counsel, who once again raised the plaintiffs' concerns as to the effect the amendment may have upon the plaintiffs' property. (Complaint ¶ 20; ROR, Item 32, pp. 7-10.) On March 6, 2000, however, the board of representatives approved the amendment despite the plaintiffs' concerns. (Complaint ¶ 22; ROR, Item 35.) The board of representatives' decision was published on March 10, 2000. (Complaint ¶ 24; ROR, Item 57). The plaintiffs now appeal this decision. (Complaint ¶ 25-27).
The plaintiffs challenge the decision on the following grounds: (1) the defendants incorrectly interpreted the charter by refusing to consider eliminating one or more properties, including the plaintiffs' property, from the amendment; and (2) the designation of the plaintiffs' property in the master plan as a public park is illegal as an inverse condemnation under the state and federal constitutions.
 JURISDICTION A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). In the present case, the plaintiffs allege both statutory and classical aggrievement. (Complaint ¶ 26.) The plaintiffs allege that they are the owners of property located in the corridor, which is the area effected by the amendment, and, therefore, they are statutorily aggrieved by the decision of the defendants. (Complaint ¶ 26.) The plaintiffs also allege that they are classically aggrieved by the decision CT Page 13232 of the defendants in that any change in designation of the subject property in the master plan adversely effects the value and marketability of the subject property. (Complaint ¶ 26.) The court held a hearing on June 27, 2001. At the hearing, the plaintiffs offered into evidence certificates of foreclosure and a statutory form warranty deed for the subject property.[1] (Plaintiffs Exhibit 1.) Because the court finds that the plaintiffs are owners of the subject property, which is located in the area effected by the amendment, the plaintiffs are aggrieved, pursuant to § 8-8 (a)(1), for purposes of bringing an appeal. SeeWinchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303,308, 592 A.2d 953 (1991) (there was sufficient evidence before the court as to the plaintiffs status as owner of the property for the court to conclude that the plaintiff was aggrieved).
 B. Timeliness of the Appeal and Service
On March 10, 2000, the board of representatives published their decision. (ROR, Item 57.) On March 20, 2000, the plaintiffs served the defendants by leaving the appeal papers with Marggie Laurie, acting chairperson of the planning board, Sally Serafino, town clerk, Carmen Domonkos, president of the board of representatives and Annie Summerville, clerk of the board of representatives. (Sheriffs Return.) Because the proper parties were served within the applicable time period, pursuant to § 8-8 (b), the appeal is timely.
 STANDARD OF REVIEW
"[The] board [of representatives] in reviewing the action of the [planning] board, is called upon to perform a legislative function." (Internal quotation marks omitted.) Benenson v. Board ofRepresentatives, 223 Conn. 777, 783, 612 A.2d 50 (1992). "Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and planning for contemporary or future conditions reasonably indicate the need. for a change. . . . The discretion of [such] a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function." (Internal quotation marks omitted.) Protect Hamden/North Haven from ExcessiveTraffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527,543, 600 A.2d 757 (1991). "This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board of representatives] acted arbitrarily or illegally." (Internal quotation marks omitted.) Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the [board] supports the decision reached." (Internal quotation marks CT Page 13233 omitted.) Id. "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.)Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707, 535 A.2d 799
(1988).
 DISCUSSION
The plaintiffs' first claim is that the defendants incorrectly interpreted the charter by refusing to consider eliminating one or more properties, including the plaintiffs' property, from the amendment. In support of this argument, the plaintiffs rely on Stamford RidgewayAssociates v. Board of Representatives, 214 Conn. 407, 572 A.2d 951
(1990).[2] This case is, however, inapposite to the present case.
In Stamford Ridgeway, our Supreme Court held that the language of the charter "permits the board of representatives to vote on each separate zone change within one application for which a valid protest petition has been filed." Stamford Ridgeway Associates v. Board of Representatives, supra, 214 Conn. 436. Based upon this holding, the plaintiffs argue that the defendants in the present case had the power to remove individual properties, including the plaintiffs' property, from the amendment. The plaintiffs argue that the board of representatives, a legislative body acting in a legislative capacity, had broad discretion to exercise its own independent judgment and did not have to simply approve or reject the entire amendment. Our Supreme Court, in the Stamford Ridgeway case, however, did not hold that individual properties from within one amendment could be removed and voted upon individually, but rather that individual amendments from within one application could be removed and voted upon individually. Id., 428-29. This is a crucial distinction and one that serves to defeat the plaintiffs' argument.[3]
Furthermore, the reasoning of the Supreme Court, in the StamfordRidgeway case, is consistent with the plain language of § C6-30-7 of the charter, which provides that upon the planning board's referral of an amendment to the board of representatives, the board of representatives "shall approve or reject such proposed amendment." (Emphasis added.) "It is well established that a city's charter is the fountainhead of municipal powers. . . . The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised." (Citation omitted; internal quotation marks omitted.) Cilley v.Lamphere, 206 Conn. 6, 12, 535 A.2d 1305 (1988). "[A] [board of representatives] [has] no source of authority beyond the charter." (Internal quotation marks omitted.) Stamford Ridgeway Associates v. Boardof Representatives, supra, 214 Conn. 423.
In construing a charter, "the rules of statutory construction generally CT Page 13234 apply." Cilley v. Lamphere, supra, 206 Conn. 12. "When the words used are explicit, they are to govern. . . . The language employed must be given its plain and obvious meaning, and, if the language is not ambiguous a court cannot arbitrarily add to or subtract from the words employed." (Internal quotation marks omitted.) Stamford Ridgeway Associates v. Boardof Representatives, supra, 214 Conn. 424. In construing identical "approve or reject" language contained in the charter relating to zoning map amendments, our Supreme Court has held that "[the] board, in reviewing the action of the zoning board, is called upon to perform a legislative function. . . . The plain language of . . . [the charter] leaves no room for any other construction." (Citation omitted; internal quotation marks omitted.) Benenson v. Board of Representatives, supra,223 Conn. 777, 783.
Whereas the charter specifically grants the board of representatives the power to modify amendments in other situations, such a power is not bestowed upon the board of representatives under the facts of this case. See, e.g., Stamford Charter §§ C1-70-4, C6-30-15, C6-140-6(5), C6-150-1, C8-60-7, and C8-60-10. Therefore, given the fact that the plain language of the charter states that the board of representatives can only "approve or reject" the amendment, and that our Supreme Court has stated that the board of representatives has "no source of authority beyond the charter," the board of representatives acted properly and within its discretion when it approved the amendment without modification,
The plaintiffs' next claim is that the designation of its land in the master plan as a public park is illegal as an inverse condemnation under the state and federal constitutions. Specifically, the plaintiffs argue that while a planning or zoning board is not compelled to change the zoning classification of a property after a change in the property's designation in the master plan, it usually implements such a change shortly thereafter. The plaintiffs argue that a prospective buyer will not purchase land where a city or town plans to turn the land into a public park. The plaintiffs' argument is flawed, however, because unless, or until, the planning board changes the property's current zoning classification to conform with the change in the master plan, the amendment does not infringe upon the plaintiffs' reasonable investment-backed expectations for the property.
"[A] regulatory taking — also known as inverse condemnation — occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner." (Internal quotation marks omitted.) Cohen v. Hartford, 244 Conn. 206, 220,710 A.2d 746 (1998).[4] "In an inverse condemnation case, the question CT Page 13235 is whether there has been a deprivation of the beneficial use of the property." Citino v. Redevelopment Agency, supra, 279-280.
"While [a]ll property is held subject to the right of government to regulate its use in the exercise of the police power . . . if [the] regulation goes too far, it will be recognized as a taking." (Citation omitted; internal quotation marks omitted.) Cohen v. Hartford, supra,244 Conn. 220-21. "In analyzing regulatory action to determine whether it goes too far, we are mindful that the difference between a regulation that results in a compensable taking and one that does not generally is a matter of degree." (Internal quotation marks omitted.) Id., 221. "Although at one extreme a regulation may deprive an owner of the beneficial use of property so as to constitute a practical confiscation, thereby requiring compensation . . . if a regulation results in something less than a practical confiscation, the determination of whether a taking has occurred must be made on the facts of each case. . . ." (Citations omitted; internal quotation marks omitted.) Id.
"The financial burden imposed on a landowner by a regulation is measured by the extent to which the regulation interferes with the property owner's reasonable investment backed expectations of use of the property. . . . [Thus] [a] regulation does not constitute a compensable taking if it does not infringe on such reasonable investment backed expectations." (Citation omitted.) Bauer v. Waste Management ofConnecticut, Inc., 234 Conn. 221, 257, 662 A.2d 1179 (1995).
In the present case, the plaintiffs argue that they purchased the property in reliance upon its present zoning classification and that any change in that classification, including a change in designation in the master plan, will effect the plaintiffs' reasonable investment-backed expectations in the property. Unless, or until, the zoning map is revised to conform with the master plan, however, the plaintiffs' property will remain, for zoning purposes, the same since "[t]he master plan does not control the zoning board in its enactment of zoning regulations but rather is merely advisory." Sheridan v. Planning Board, 159 Conn. 1, 9,266 A.2d 396 (1969) ("Even under Stamford's charter, where the recommendation is more than advisory because the zoning board cannot amend the zoning map in a manner inconsistent with the master plan . . . [t]he Stamford zoning board may, if it so chooses, ignore the recommendations of the master plan and refuse to amend the zoning map." (Citation omitted.)). The plaintiffs therefore can use their property as it is currently zoned — residential, multifamily, high density — without loss to themselves or others. Bauer v. Waste Managementof Connecticut, Inc., supra, 234 Conn. 259.
For the reasons set forth above, the plaintiffs' appeal from the CT Page 13236 defendants' adverse decision is dismissed.
So Ordered.
RYAN, J.