[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Susan S. Starr, appeals a decision of the defendant commissioner of environmental protection (commissioner) ordering her to eliminate soil, surface and groundwater pollution in and on land owned by her in the town of Enfield. The commissioner's order was issued pursuant to General Statutes 22a-432 AND 22a-433. The plaintiff appeals pursuant to General Statutes 22a-439 and 4-183. The court rules in favor of the plaintiff.
Certain preliminary facts are undisputed. The plaintiff acquired the property in question in 1987 by deed from the estate of her late husband. In June 1989, the department of environmental protection (DEP) commenced an investigation of complaints of noxious odors coming from the property. The investigation, which consumed more than a year, revealed that the property had been utilized for the disposal of solid wastes which included demolition debris and industrial wastes. These wastes are a source of pollution to the waters of the state and, in fact, samples taken from surface waters on and emanating from the property show that those waters already are polluted as defined by the state environmental protection laws, General Statutes 22a-423 et seq. On July 9, 1990, the commissioner issued an enforcement order to the plaintiff directing her to take steps necessary to eliminate the pollution. The plaintiff requested a hearing on that order, pursuant to General Statutes 22a-436, and a hearing was conducted on March 15, 1991 by an adjudicator, or hearing officer, to whom the commissioner had delegated authority to decide the case. On June 28, 1991, the adjudicator issued a final decision, in behalf of the commissioner, confirming the commissioner's previous enforcement order. The plaintiff appeals that final decision.
On the basis of facts in the record, the court finds that the plaintiff is aggrieved by the final decision of the DEP and has standing to appeal. See Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168 (1991). CT Page 1673
The facts set forth above were stipulated by the parties at the hearing. In addition to the stipulation, there was considerable, indeed overwhelming evidence that the dumping of the pollutants occurred long before the plaintiff or her husband owned the property and that the dumping was done by a now defunct trucking company which was hauling the material from gas producing companies in Massachusetts. Although the adjudicator made no findings of fact which specifically identified those responsible for the dumping of the pollutants, all of the evidence showed that it was not the plaintiff. There was also evidence, which was likewise uncontradicted, that the plaintiff was actually denied any access to the property from the time she acquired it until the summer of 1989, when the pollution was first noticed. This circumstance came about as a result of the town's control of the road leading into the property and its refusal to allow the plaintiff to use that road. The point of this evidence is that it shows that the plaintiff's ownership of the property was utterly passive up to the time the pollution was discovered.
At the hearing, the DEP objected to the admission of any evidence relating to the source or cause of the pollution, including especially the evidence showing the plaintiff's lack of culpability. The adjudicator admitted the evidence, but in his final decision he essentially held that it was not relevant in assessing responsibility for the clean-up. The adjudicator concluded that General Statutes 22a-432 and 322a-433 impose strict and full liability on the owner of property for the elimination of pollution, regardless of the owner's "innocence" in causing it and regardless of the culpability of other persons. That conclusion raises the dispositive issue in this case.
Sections 22a-432 through section 42a-452c create a statutory scheme for the enforcement of DEP orders to eliminate pollution. Although these statutes are not contradictory, they fit together somewhat awkwardly, and the court concludes that the commissioner has misapplied them in this case. As indicated, the agency decision is based on sections 22a-432 and22a-433. The decision explicitly states that each of these statutes separately provides a basis for holding the plaintiff liable for the cost of the clean-up. Turning first to section22a-433, it reads, in relevant part, as follows:
 Whenever the commissioner issues an order to abate pollution to any person pursuant to the provisions of section 22a-430 or 22a-431, an order to correct potential sources of pollution pursuant to the provisions of section 22a-432 or an order to correct a violation of hazardous waste regulations CT Page 1674 pursuant to section 22a-449 and the commissioner finds that such person is not the owner of the land from which such source of pollution or potential source of pollution emantes, he may issue a like order to the owner of such land or shall send a certified copy of such order, by certified mail, return receipt requested, to the owner at his last-known post office address, with a notice that such order will be filed on the land records in the town wherein the land is located. When the commissioner issues such an order to an owner, the owner and the person causing such pollution shall be jointly and severally responsible.
Clearly, the primary precondition of that statute was not satisfied in this case. The statute covers the situation where the commissioner has first ordered someone other than the owner to abate pollution based on that person's actual culpability under another statute, and then finds that that person is not the owner of the property. The commissioner may then issue a "like order" to the owner, i.e. the plaintiff in this case, and hold her jointly and severally liable, based solely on her status as owner. In this case, however, the commissioner never issued an order to anyone else, so there was no one with whom the plaintiff could be held jointly and severally liable. The adjudicator argues, in his decision, that the statute is remedial and should be liberally construed "to reach the desired result." But the cardinal rule of statutory interpretation is that where the language is clear and unambiguous, there is no room for construction. Cilley v. Lamphere, 206 Conn. 6, 9 (1988). The language of section22a-433 clearly and unambiguously requires that the commissioner first issue an enforcement order to a person who is liable under some other statutory provision before imposing joint and several liability on a non-culpable property owner. By its explicit terms, the statute cannot be employed to confer liability on a non-culpable property owner alone. The commissioner's interpretation is undeniably more convenient for the DEP but it creates a much more onerous burden on an innocent, passive owner than the statute contemplates. Properly interpreted and enforced, section 22a-433 penalizes such an owner only in conjunction with the person actually responsible for causing the pollution.
Section 22a-432, the other stated basis for the adjudicator's decision, does provide a means of imposing liability on an owner alone, and/or anyone else, based on a finding that such person was responsible, as provided in the statute, for the pollution. That statute, in relevant part, CT Page 1675 reads as follows:
 If the commissioner finds that any person has established a facility or created a condition before or after June 25, 1985, or is maintaining any facility or condition which reasonably can be expected to create a source of pollution to the waters of the state, he may issue an order to such person to take the necessary steps to correct such potential source of pollution.
In his decision, the adjudicator implicitly conceded that the plaintiff had not "established a facility or created a condition" causing the pollution. Rather, the adjudicator concluded that mere passive ownership of property which is found to be polluted constitutes "maintaining [a] facility or condition which reasonably can be expected to create a source of pollution" and thereby renders such owner liable for the clean-up.
The adjudicator noted, in support of his conclusion, that dictionary definitions do not include an element of scienter. He also cited a previous decision of the DEP holding "mere ownership" to be a sufficient basis for liability under this statute. Final Decision in re Enforcement Order No. 681 issued to Phillip G. Andrews et al., (February 5, 1991). In his brief and at oral argument on this appeal, the commissioner further argues that the other statute, section 22a-433, even if it does not impose sole liability on an owner, indicates a general statutory scheme to impose liability on the owner regardless of fault and that section 22a-432 embraces that concept of no-fault liability in its use of the term "maintaining." The court rejects these arguments for the reasons set forth below.
The issue is whether an owner of property on which pollutants were dumped by other persons prior to her acquisition of it, but who herself has had no active involvement with the property, not even to go on it to inspect it, is "maintaining" the condition causing the pollution within the meaning of section 22a-432. The statute includes no definition of the term "maintaining", and both parties in their briefs cite various dictionary definitions. Thus, both parties note Webster's New International Dictionary as defining "maintain" to mean "to hold or keep in any particular state or condition," citing Aaron v. Conservation Commission, 183 Conn. 532
(1981). That case cited the same dictionary as defining "maintenance" to mean "the labor of keeping something (as building or equipment) in a state of repair or efficiency." The court notes that Webster's Ninth New Collegiate Dictionary contains several pertinent definitions of "maintain": "1: to keep in an existing state (as of repair, efficiency, or validity); preserve from failure or decline. . . 3: to continue or persevere in." CT Page 1676 Similarly, Black's Law Dictionary Fifth Edition defines "maintain" as "acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition . . . carry on . . . continue . . . furnish means for subsistence or existence of . . . hold or keep in an existing state or condition." All of these dictionary definitions of "maintain" include the concept of some positive conduct or effort designed to preserve a particular condition. However, all of the evidence that was before the adjudicator in this case established that the plaintiff had had no active involvement of any kind in the property. As previously indicated, the evidence showed that she had not even been on the property and was unaware of the pollution until others brought it to her attention two years after she acquired the property. Under these circumstances, she cannot be held to have been "maintaining any facility or condition which . . . create(d) a source of pollution" on that property, at least in accordance with the commonly approved usage of the term "maintaining."
The court also rejects the argument that the provisions of section 22a-433, which establish the liability of a passive owner in some circumstances, also lend a special meaning to the term "maintaining" as it is used in section 22a-432. The court has already noted that section 22a-433 is limited to situations where the DEP has first issued an enforcement order to the person actually responsible for causing or maintaining the pollution. The fact that joint and several liability can then be imposed on a passive owner under that statute does not change the plain meaning of the words used in the other statute.
Finally, on this point, the commissioner argues that the court should give special deference to his interpretation of section 22a-432 and notes a previous DEP decision which supports it. However, the commissioner's interpretation of the statute is a question of law and it has not previously been subject to review by the court. Accordingly, it is not entitled to special deference. Lieberman v. Board of Labor Relations, 216 Conn. 253, 263 (1990).
At oral argument on this appeal and in briefs, both counsel referred to other statutes in chapter 446k, concerning water pollution control. The court has examined these statutes and concludes that the overall statutory scheme does indeed contemplate holding owners of polluted property liable to some extent for the cost of the necessary clean-up even in those cases where they had nothing to do with causing or maintaining the condition. But the DEP can achieve that result only by following the statutory procedures.
General Statutes 22a-449 (a), cited by counsel, provides, in relevant part, as follows: CT Page 1677
 The commissioner of environmental protection shall, to the extent possible, immediately, whenever there is discharge, spillage, uncontrolled loss, seepage or filtration of oil or petroleum or chemical liquids or solid, liquid or gaseous products or hazardous wastes upon any land or into any land or into any of the waters of the state or into any offshore or coastal waters, which may result in pollution of the waters of the state, . . . cause such discharge, spillage, uncontrolled loss, seepage or filtration to be contained and removed or otherwise mitigated by whatever method said commissioner considers best and most expedient under the circumstances. The commissioner shall also (1) determine the person, firm or corporation responsible for causing such discharge, spillage, uncontrolled loss, seepage or filtration. . . .
In addition to the enforcement orders authorized by sections22a-432 and 22a-433, discussed above, counsel also pointed to sections 22a-451 and 22a-452a as providing methods which the commissioner may employ to eliminate pollution. Section22a-451 authorizes the commissioner to enter into contracts to have the pollution removed if the person responsible for causing it does not comply with an enforcement order or if such person cannot be found or is unknown. That statute also authorizes the commissioner to bring a civil action against the responsible party for the costs of having the pollution removed or, if that person cannot be found or is unknown, the commissioner may apply for reimbursement under the federal Water Pollution Control Act. Finally, section 22a-452a
provides that "any amount paid by the commissioner. . . pursuant to subsection (b) of section 22a-451 to contain and remove or mitigate the effects of a spill shall be a lien against the real estate on which the spill occurred."
In his decision, the adjudicator concluded that section22a-433 must be interpreted to permit the DEP to hold an "innocent" owner liable for pollution on her land without first issuing an enforcement order to the person actually responsible, because otherwise the DEP would be powerless to accomplish a clean-up when the culpable person cannot be found or is unknown. The adjudicator further held that the DEP "is not bound to seek out each and every potentially liable person." As the foregoing discussion of sections 22a-449,22a-451 and 22a-452a makes clear, however, the adjudicator's conclusions were erroneous. Those statutes do require the commissioner to determine who caused the pollution and they do CT Page 1678 provide methods for accomplishing the clean-up when the culpable person cannot be found or is unknown. They do provide, also, that an "innocent" owner may ultimately bear some or all of the cost by means of a lien on her property. But that is the last step under these statutes, not the first. In this case, the commissioner essentially attempted to take a short cut which the statutes do not provide.
There is good reason for requiring the commissioner to adhere precisely to the provisions of the various statutes discussed above. The overall scheme has the potential for subjecting an "innocent" owner to liability in excess of the value of his or her property, even after it has been rendered pollution-free. In this case, there was no evidence of the value of the property, forty-four acres in Enfield, but the plaintiff's attorney stated during oral argument that the estimated cost of clean-up is $700,000. If the plaintiff is eventually held responsible to pay a sum exceeding the value of the land, in effect she will have inherited a liability not an asset. Such a potentially harsh penalty for innocently "being in the wrong place at the wrong time" obliges the government at least to scrupulously follow the statutory procedures.
For all of the foregoing reasons, the court concludes that the adjudicator's decision holding the plaintiff liable for the pollution clean-up under General Statutes 22a-432
and 22a-433 was based on erroneous interpretations of those statutes. His decision affirming the commissioner's enforcement order was, therefore, likewise in error.
The plaintiff's appeal is sustained.
MALONEY, J.