CITY OF NORWICH ET AL. *v.* NORWALK
WILBERT VAULT COMPANY, INC.
(4634)

DUPONT, C. J., BORDEN and DALY, Js.

Argued March 4—decision released June 23, 1987

*Mary E. Holzworth,* with whom was *John R. Fitz-gerald,* for the appellant (defendant).

*Sally S. King,* with whom was *Brian R. Smith,* for the appellee (named plaintiff).

DALY, J. The named plaintiff, the city of Norwich,[1] instituted this action seeking to enjoin the defendant from using its premises, on which was located a cement

[1] The city was joined in this action at the trial by two couples owning residences in a residential zone adjacent to the industrial zone in which the defendant's property is located. Those parties did not join in this appeal. We refer herein to the city as the plaintiff.

manufacturing operation, as a trucking terminal. The plaintiff claimed that the defendant was required to obtain site plan approval before using its premises as a trucking terminal, and that such use constituted a nuisance. The defendant counterclaimed, alleging that there had been an impermissible delegation of a zoning function by the city council to the commission on the city plan, contrary to the Norwich city charter, and, furthermore, that the requirements for site plan approval were unconstitutional. Judgment was rendered enjoining the defendant from using its property as a trucking terminal.

The defendant has appealed claiming that the trial court erred in concluding (1) that site plan approval was required for the addition of truck storage use, and (2) that the city council's delegation of the site plan approval process to the commission was not outside the scope of the city's charter. We disagree.

The trial court found that the defendant had conducted a concrete business on its premises for over fifty years, manufacturing burial vaults, septic tanks and other concrete products. The business employs twenty-two people and owns seventeen trucks. It delivers its products to customers and receives raw materials via its own trucks and by common carrier. The premises are located in a heavy industrial zone (I-2) in which permitted uses include all types of industry, including trucking terminals. In 1982, the defendant rented space to various trucking companies. Empty trailers were stored on the property. Eventually, some grading was done and an employee parking area was enlarged. Since that time, there has been truck traffic twenty-four hours per day, seven days per week, with attendant noise, soot and fumes. Prior to the use of the property as a trucking terminal, there was truck traffic only during daylight hours, Monday through Friday and occasionally on Saturday mornings.

The trial court considered sections 10.2,[2] and chapter 17,[3] of the Norwich code and determined that these regulations require site plan approval when there is an increase in a permitted use. The court further held that the city council, by enacting ordinances which delegate site plan review to the commission, acted within the scope of its charter, and thus did not deprive the plaintiff of due process.

It has repeatedly been held by the appellate courts of this state that the granting of injunctive relief lies within the sound discretion of the trial court. A court's action in this respect will not be disturbed unless it was an abuse of discretion. *Lichteig* v. *Churinetz,* 9 Conn. App. 406, 412, 519 A.2d 99 (1986). In addition, when a trial court reaches a decision on mistaken grounds, the trial court's action will be sustained, if proper grounds exist to support it. *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 509, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d

[2] Section 10.2.1 provides in part: "Heavy industrial district, I-2, No buildings or uses are permitted in the heavy industrial district, except in accordance with the following: (1) Any permitted use allowed in the light industrial district . . . (h) (4) manufacture of bricks, cement products, tile and terra cotta. (5) Bulk storage of cement and concrete mixing plants."

"10.2.2 Site plan review. All uses permitted in this district shall be subject to site plan approval by the commission in accordance with the provisions of Chapter 17, hereof."

[3] Section 17.2 provides in pertinent part: "In approving any site plan, the commission shall take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular. The commission shall also consider the following general objectives . . . .

"17.2.2 That, in addition to the above, in the case of any use located in, or directly adjacent to, a residence district: (a) The location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the use and the assembly of persons in connection therewith will not be hazardous or inconvenient to, or incongruous with, the said residence district or conflict with the normal traffic of the neighborhood . . . . "

612 (1984), citing *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978). This is such a case. We conclude that the defendant did not simply increase a permitted use, but rather began a different, additional use and therefore is required to obtain site plan approval for that new permitted use. Here, the defendant leased office space at the vault company to Barth Sales and Norwich Express, two separate trucking companies. Each tenant pays monthly rent for office space and for space on which to park its tractor trailer trucks.

The trial court concluded that the use of the defendant's premises as a trucking terminal was an increase in a preexisting permitted use. It then interpreted the ordinances to require site plan approval whenever there is an increase in a permitted use of property. We need not reach this issue, since we are convinced that in this case the defendant added a different permitted use[4] to another permitted use on its property. The trucking companies are clearly separate and distinct businesses from the concrete plant. The issue, therefore, is whether such an addition requires site plan approval. We hold that it does.

When interpreting the language of zoning regulations, our function is to determine the expressed legislative intent. *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 73, 282 A.2d 900 (1971). The enactment should be examined in its entirety and its parts reconciled so that no part is rendered meaningless.

According to § 1.57, the definitional section of the Norwich code of zoning ordinances, "use" is defined

[4] Chapter 10 of the Norwich code provides in pertinent part: "10.1.1 Permitted uses. No buildings or uses are permitted in the light industrial district, except in accordance with the following . . . (g) Trucking terminals . . . ."

See also footnote 2, supra.

as "the purpose for which land or a building is arranged, or intended, or for which either land or a building is or may be occupied or maintained." The land on which the defendant company is located is zoned for heavy industrial use, which by reference to § 10.1.1 of the Norwich code, permits trucking terminals.[5]

Section 10.2.2 of the Norwich code, however, provides that "*all uses* permitted in this district shall be subject to site plan approval by the commission in accordance with the provisions of Chapter 17, hereof." (Emphasis added.) We interpret that ordinance to mean that each and every use must be approved by the commission. Section 17.2 further provides: "In approving any site plan, the commission shall take into consideration the public health, safety and general welfare, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular." Section 17.2.2 provides that, "in addition to the above, in the case of *any use* located in, or directly adjacent to, a residence district: (a) the location and size of such use, the nature and intensity of operations involved in or conducted in connection therewith, its site layout and its relation to access streets shall be such that both pedestrian and vehicular traffic to and from the *use* and assembly of persons in connection therewith will not be hazardous or inconvenient to, or incongruous with, the said residence district or conflict with the normal traffic of the neighborhood . . ." (Emphasis added.) Clearly, the intent of this section was to review the site plan for each and every use, including permitted uses, to determine its effect on the surrounding area. To allow the addition of one permitted use to another, different permitted use, with its drastic change in effect on the adjacent residential area, is to ignore the intent and language of this entire regulation.

[5] See footnotes 2 and 4, supra.

Review of these ordinances suggests that even uses permitted by the zoning classification are subject to site plan approval. The defendant's use of its property for a cement manufacturing plant was a permitted use of the property. Indeed, the defendant had previously obtained site plan approval for its cement plant which of necessity included limited truck traffic. It had never requested, let alone obtained, approval for a trucking terminal.

Use of the property as a cement manufacturing plant entailed some subsidiary truck traffic. The additional use of the property as a trucking terminal was a different use as defined in the Norwich code and entailed a dramatic increase in truck usage. Such an additional use requires site plan approval under § 10.2.2, supra, of the Norwich ordinances. On these grounds, therefore, we conclude that it was proper for the trial court to issue an injunction in this case and to require site plan approval.

We turn now to the defendant's second claim, that the ordinance delegating the authority to approve or disapprove site plans to the commission on the city plan is an impermissible delegation of a zoning function. We conclude that this claim is not properly before us. The defendant in this case has not been aggrieved by the ordinance it challenges. Indeed, it has not attempted to obtain site plan approval under its regulations. Until the commission on the city plan functions as contemplated by the ordinances, it cannot possibly be said that the defendant has been denied due process by that ordinance. *Florentine* v. *Darien,* 142 Conn. 415, 427, 115 A.2d 328 (1955). If the defendant applies for and is denied site plan approval under the ordinance, it may then challenge, in a declaratory judgment action, the constitutionality of the ordinance. *Cristofaro* v. *Planning & Zoning Commission,* 11 Conn. App. 260, 262–63, 527 A.2d 255 (1987). The broad constitutional

attack the defendant mounts here is more appropriately made in a declaratory judgment action which provides sufficient safeguards to permit notice to and intervention by all interested persons. See General Statutes § 52-29; Practice Book §§ 388 through 394; see also *Bierman* v. *Planning & Zoning Commission,* 185 Conn. 135, 140, 440 A.2d 882 (1981); *Echo Four* v. *Hill,* 3 Conn. App. 118, 123–24, 485 A.2d 926 (1985). Thus, we will not review this claim.

Finally, we note that the trial court made no finding as to the independent nuisance claim nor was it raised by the parties on appeal. We therefore do not address it.

There is no error.

In this opinion the other judges concurred.