# CITY OF NORWICH ET AL. *v.* NORWALK WILBERT VAULT COMPANY, INC.
## (13200)

HEALEY, SHEA, CALLAHAN, GLASS and SANTANIELLO, Js.

Argued March 3—decision released June 21, 1988

*Mary E. Holzworth,* with whom were *John R. Fitzgerald* and, on the brief, *Michael D. Colonese,* for the appellant (defendant).

*Sally S. King,* with whom were *Brian R. Smith* and *Raymond T. DeMeo,* for the appellee (named plaintiff).

GLASS, J. The named plaintiff,[1] the city of Norwich, instituted an action seeking to enjoin the defendant, Norwalk Wilbert Vault Company, Inc., from operating a trucking terminal on its property located in Norwich, claiming that the defendant was in violation of Norwich zoning ordinance because it did not file a site plan with the commission on the city plan (commission) prior to engaging in this use of the property. The trial court rendered judgment for the plaintiff enjoining the defendant from using its property as a trucking terminal. The defendant appealed to the Appellate Court claiming, inter alia, that the ordinance delegating to the commission the authority to approve or disapprove site plans was an impermissible delegation of a zoning function. The Appellate Court held that this claim was not properly before the court because the defendant had not been aggrieved by the ordinance it challenged, as the defendant had not sought to obtain site plan approval under the Norwich zoning ordinances.

---

[1] The city of Norwich was joined by the intervening plaintiffs, two couples who own residences on Vergason Avenue, Norwich. Hereinafter reference to the plaintiff, the city of Norwich, will be deemed to include the intervening plaintiffs.

We granted certification limited to the issue as to whether, in an action by a city to enjoin certain activities of a landowner as violative of a zoning ordinance, the defendant landowner may attack the validity of the ordinance without first having attempted to secure such administrative relief as may be available under the ordinance. The plaintiff filed a preliminary statement of alternate grounds of affirmance, which presents the additional issue of whether, assuming that the defendant can challenge in this action the delegation of site plan review authority to the commission, that delegation was proper and constitutional under the city charter.

The underlying facts are fully set forth in *Norwich* v. *Norwalk Wilbert Vault Co.*, 11 Conn. App. 332, 527 A.2d 716 (1987). The defendant operated a concrete manufacturing business on its property in Norwich, which was a conforming use in an area which was classified as a heavy industrial zone. In 1982, the defendant began renting space to various trucking companies that used the property as a trucking terminal. The heavy industrial zone permits trucking terminals. Under § 10.2.2 of the Norwich zoning ordinances, "[a]ll uses permitted in [the heavy industrial zone] shall be subject to site plan approval by the commission in accordance with the provisions of Chapter 17, hereof." Chapter 17 of the Norwich zoning ordinances provides criteria for a site plan approval, and sets forth specific factors to be considered when a heavy industrial zone borders a residential zone. The trial court found that the use of the defendant's property as a trucking terminal was an increased use of the property, and therefore, that site plan approval was needed. Because the defendant had not sought site plan approval prior to engaging in the increased use of the property, the trial court issued an injunction enjoining the defendant from using the premises as a trucking terminal. The Appellate Court

upheld the decision of the trial court on the ground that the defendant had not exhausted the available administrative remedies and therefore did not reach the issue of delegation of authority.

I

The Appellate Court held that the defendant's claim, that the ordinance delegating the authority to the commission to approve or disapprove site plans was an impermissible delegation of a zoning function, was not properly before the court. The court reasoned that "[t]he defendant in this case has not been aggrieved by the ordinance it challenges. . . . Until the commission on the city plan functions as contemplated by the ordinances, it cannot possibly be said that the defendant has been denied due process by that ordinance. . . . If the defendant applies for and is denied site plan approval under the ordinance, it may then challenge, in a declaratory judgment action, the constitutionality of the ordinance." *Norwich* v. *Norwalk Wilbert Vault Co.,* supra, 337–38. We disagree with the holding of the Appellate Court.

It is well settled that a jurisdictional prerequisite to seeking relief in a court of law is that all available administrative remedies must have been exhausted. *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn 551, 556, 529 A.2d 666 (1987); *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 1230 (1987); *Doe* v. *Heintz,* 204 Conn. 17, 34, 526 A.2d 1318 (1987). We have held, however, that under limited circumstances, there are exceptions to this principle. One such exception is that where the available relief is inadequate or futile, the administrative process may be bypassed. *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 541, 469 A.2d 382 (1983); *Sullivan* v. *State,* 189 Conn. 550, 553–54, 457 A.2d 304 (1983); *Kosinski* v. *Lawlor,* 177 Conn. 420, 425, 418 A.2d 66 (1979); *Bianco* v. *Darien,* 157 Conn.

548, 554–55, 254 A.2d 898 (1969). In *LaCroix* v. *Board of Education,* 199 Conn. 70, 79 n.7, 505 A.2d 1233 (1986), we noted that "[e]xhaustion of administrative remedies is generally not required when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency. *Conto* v. *Zoning Commission,* 186 Conn. 106, 115, 439 A.2d 441 (1982); *General Dynamics Corporation* v. *Groton,* 184 Conn. 483, 490, 440 A.2d 185 (1981); *Friedson* v. *Westport,* 181 Conn. 230, 233, 435 A.2d 17 (1980)." Generally, such challenges have been instituted by a plaintiff in a declaratory judgment action. *Bierman* v. *Planning & Zoning Commission,* 185 Conn. 135, 440 A.2d 882 (1981); *Bencivenga* v. *Milford,* 183 Conn. 168, 438 A.2d 1174 (1981).

Today we apply this exception to the exhaustion principle to a case in which a defendant challenges the constitutional validity of a municipal ordinance in an action to enforce its provisions against him. This exception has gained acceptance by a number of state courts that have specifically considered this issue. The seminal case is *Lake* v. *MacNeal,* 24 Ill. 2d 253, 181 N.E.2d 85 (1962), where the court held that the exhaustion principle does not apply to an action brought by a local government to enforce its own ordinances. The court stated that "there is . . . the sound principle, based upon the assumption that one may not be held civilly or criminally liable for violating an invalid ordinance, that a proceeding for the violation of a municipal regulation is subject to *any defense which will exonerate the defendant from liability, including a defense of the invalidity of the ordinance.*" (Emphasis added.) Id., 260. The rule is that "[s]o long as local authorities institute an action, a defendant should be entitled to defend on the ground of the invalidity of the ordinance and to have the issue determined." Id. The court also stated: "[W]e

believe there are substantial differences between a property owner who is the moving party in an action to declare an ordinance invalid as to his property, and one who is summoned into court and charged with illegally violating the ordinance . . . in the latter instance the very act of filing a complaint reflects a judgment on the part of the local authority that . . . they see no particular hardship and no necessity to correct the zoning regulation." Id. Thus, the *MacNeal* court based its holding on the premise that appealing the validity of an ordinance to the body charged with enforcing the ordinance is a futile act.[2]

Moreover, the *MacNeal* rule has been adopted in many jurisdictions that have addressed the issue. See *Board of Commissioners* v. *Goldenrod Corporation,* 43 Colo. App. 221, 601 P.2d 360 (1979); *Freeborn* v. *Claussen,* 295 Minn. 96, 203 N.W.2d 323 (1972); *Londonderry* v. *Faucher,* 112 N.H. 454, 299 A.2d 581 (1972); *New Paltz* v. *Pencil Hill Properties Corporation,* 60 App. Div. 2d 738, 400 N.Y.S.2d 908 (1977); *Johnson's Island, Inc.* v. *Board of Township Trustees,* 69 Ohio St. 2d 241, 431 N.E.2d 672 (1982); *Yakima County Clean Air Authority* v. *Glascam Builders, Inc.,* 85 Wash. 2d 255, 534 P.2d 33 (1975). We agree with the defendant's contention that where a party contests the very validity of a zoning ordinance, relief under the ordinance would be inadequate or futile. Under Connecticut law, local administrative bodies lack the competency to adjudicate the facial validity of an ordinance. See *Bencivenga* v. *Milford,* supra. This situation is distinguishable from a case where a landowner challenges the validity of an ordinance as applied. See *Florentine*

---

[2] The court stated: "To compel a property owner to first seek local relief in the face of the demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice." *Lake* v. *MacNeal,* 24 Ill. 2d 253, 260, 181 N.E.2d 85 (1962).

v. *Darien,* 142 Conn. 415, 115 A.2d 328 (1955). We are persuaded that in this instance, where the plaintiff city has haled the defendant into court, the defendant may defend on the ground of the general invalidity of the ordinance, without exhausting all available administrative remedies.

The plaintiff's argument, relying on *Bierman* v. *Planning & Zoning Commission,* supra, that the defendant should have brought a declaratory judgment action to challenge the validity of the zoning ordinance does not take into consideration the different procedural framework of a challenge made by a defendant rather than a plaintiff. In *Bierman,* we stated that "[t]he rule extant under our zoning cases is that a party who has sought to avail himself of a zoning ordinance by making an application thereunder is precluded in the same proceeding from raising the question of its constitutionality. . . . A party, however, could of course attack the constitutionality of the zoning regulations in an independent proceeding." Id., 139–40. In *Bierman,* a *plaintiff* was seeking redress under a zoning ordinance that it contended was invalid. The important policy we enunciated was that a declaratory judgment action would be the proper procedure for resolving the validity of the ordinance in order to ensure that all affected landowners would be provided with an opportunity to become involved in the proceedings. It is incongruous, however, to say that when property rights are at stake, in an action instigated by the municipality, a *defendant* may not challenge the validity of an ordinance in the proceeding that implicates his or her property rights. A defendant who does not abide by a zoning ordinance may be subject to fines, injunctions, penalties and imprisonment. See General Statutes § 8-12; Norwich Zoning Ordinances § 18.4. Thus, an appeal at a later date may not provide appropriate relief. We adhere to the principle that an invalid ordinance should

not be enforced. *Ruttenberg* v. *Dine,* 137 Conn. 17, 19, 74 A.2d 211 (1950).

## II

Having determined that the defendant was entitled to defend upon the ground of the unconstitutionality of the ordinance without having exhausted all available administrative remedies, we must examine the validity of the ordinance itself. The plaintiff claims that the judgment of the Appellate Court should be upheld on the alternate ground that the Norwich city council's delegation of authority to the commission to review and approve site plans did not deprive the defendant of due process of law under the United States and Connecticut constitutions. We agree.

The city of Norwich exercises its zoning power by virtue of a special act. Spec. Acts 1951, No. 573. This act established the Norwich city charter, which is the source of authority for the zoning ordinance that the defendant has challenged. *O'Meara* v. *Norwich,* 167 Conn. 579, 581, 356 A.2d 906 (1975). The defendant claims that the ordinance, by delegating the authority to approve site plans to the commission, is unconstitutional because the charter does not specifically confer such power upon the commission.

In our recent decision in *Cilley* v. *Lamphere,* 206 Conn. 6, 535 A.2d 1305 (1988), we examined the Norwich city charter and noted these basic principles of law. " ' "It is well established that a city's charter is the fountainhead of municipal powers . . . ." ' *Lombardi* v. *Bridgeport,* 194 Conn. 601, 604, 483 A.2d 1092 (1984). 'The charter serves as an enabling act, both creating power and prescribing the form in which it must be exercised.' *West Hartford Taxpayers Assn., Inc.* v. *Streeter,* 190 Conn. 736, 742, 462 A.2d 379 (1983). Agents of a city, including commissions, have no source of authority beyond the charter. *Perretta* v.

*New Britain,* 185 Conn. 88, 92, 440 A.2d 823 (1981). When a charter is construed, the rules of statutory construction generally apply. *Arminio* v. *Butler,* 183 Conn. 211, 217, 440 A.2d 757 (1981). Common sense must be used in construing a statute. *Murach* v. *Planning & Zoning Commission,* 196 Conn. 192, 196, 491 A.2d 1058 (1985)." *Cilley* v. *Lamphere,* supra, 12. We also note that "[t]he ordinance must rest primarily upon the enabling act and must not go beyond the power delegated by it." *Bishop* v. *Board of Zoning Appeals,* 133 Conn. 614, 619, 53 A.2d 659 (1947).

Our examination of the Norwich city charter indicates that it confers broad power upon the city council to enact ordinances governing land use. Chapter 15, § 6, of the charter vests the city council with the power to regulate land use.[3] Chapter 5, § 8, of the charter provides in pertinent part that "every act [of the city council] . . . placing any burden upon or limiting the use

---

[3] Chapter 15, § 6, of the Norwich city charter provides: "Subject to the provisions of section 4 of this chapter the council shall have power to regulate by ordinance the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be built upon, the size of yards, courts and other open spaces; the density of population; and the location and use of buildings, structures and land for trade, industry, residence or other purposes; and in so doing may divide the city into zones of such number, shape and area as may be best suited to carry out the purposes of this section. Such regulations shall be uniform within each zone for each class of building and structure and shall be made in accordance with a comprehensive plan and shall be designed to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health and general welfare; provide adequate light and air; prevent the overcrowding of land; avoid undue concentration of population and facilitate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the zone and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the city. The council shall also provide by ordinance for the manner in which such regulations and the boundaries of such zones shall be respectively enforced and the conditions under which exceptions or variations may be granted by the zoning board of appeals."

of private property, shall be by ordinance."[4] Chapter 15, §§ 6 and 13, of the charter provide for the manner in which land use ordinances are enforced.[5] Finally, chapter 17 of the Norwich zoning ordinances establishes the substantive criteria governing the review and approval of site plans and provides for their enforcement through the commission on the city plan.[6] Thus,

[4] Chapter 5, § 8, of the Norwich city charter provides: "In addition to such acts of the council as are required by the general statutes or by other provisions of this charter to be by ordinance, every act creating, altering or abolishing any agency, office or employment, or assigning or reassigning the same to departments, fixing compensation, making an apropriation, authorizing the borrowing of money, levying a tax, establishing any rule or regulation for the violation of which a penalty is imposed, or placing any burden upon or limiting the use of private property, shall be by ordinance."

[5] Chapter 15, § 13, of the Norwich city charter provides: "Zoning regulations as provided in this chapter shall be enforced as shall be provided by ordinance. Violations of such regulations shall be punished and such other remedies shall be available as provided by the general statutes of the state of Connecticut."

[6] Chapter 17, § 17.4, of the Norwich zoning ordinances provides: "In the site plans for a particular use the commission shall give specific consideration to the design of the following:

"17.4.1 TRAFFIC ACCESS. That all proposed traffic access ways are: adequate but not excessive in number; adequate in width, grade, alignment and visibility; not located too near street corners or other places of public assembly; and other similar safety considerations.

"17.4.2 CIRCULATION AND PARKING. That adequate off-street parking and loading spaces are provided to prevent parking in public streets of vehicles of any persons connected with or visiting the use and that the interior circulation system is adequate to provide safe accessibility to all required off-street parking.

"17.4.3 LANDSCAPING AND SCREENING. That all playground, parking and service areas are reasonably screened at all seasons of the year from the view of adjacent residential lots and streets and that the general landscaping of the site is in character with that generally prevailing in the neighborhood. Preservation of existing trees over 10″ in diameter to the maximum extent possible shall be encouraged.

"17.4.4 ILLUMINATION. That lighting from the installation of outdoor flood or spot lighting and illuminated signs will be properly shielded so that such lighting will not adversely affect any abutting property or public street.

"17.4.5 CHARACTER AND APPEARANCE. That the character and appearance of the proposed use, buildings, and/or outdoor signs will be in general

the charter has conferred power to regulate land use on the city council, and this authority must be exercised by ordinance. By ordinance, the city council estab-

harmony with the character and appearance of the surrounding neighborhood and that of the City of Norwich and will not adversely affect the general welfare of the inhabitants of the city.

"17.4.6 COASTAL SITE PLAN REVIEW. In addition to any other applicable site plan review criteria prescribed by Chapter 17 hereof, a coastal site plan required under this Section shall be reviewed and may be approved, modified and approved, or denied in accordance with the following procedures and criteria:

"(a) The commission may, at its discretion, hold a public hearing on any coastal site plan submitted to it for review.

"(b) In determining the acceptability of potential adverse impacts of the proposed activity described in the coastal site plan on both the coastal resources and the future water-dependent development opportunities, the commission shall: (1) consider the characteristics of the site, including the location and condition of any coastal resources defined in Section 22a-93 of the General Statutes; (2) consider the potential effects, both beneficial and adverse of the proposed activity on coastal resources and future water-dependent development opportunities; and (3) follow all applicable goals and policies stated in Section 22a-92 of the General Statutes and identify any conflicts between the proposed activity and any goal or policy. When approving, modifying, conditioning or denying a coastal site plan on the basis of the criteria herein prescribed, the commission shall state in writing the findings and reasons for its action and shall send a copy of any decision by certified mail to the person who submitted such plan within fifteen (15) days after such decision is rendered.

"(c) In approving any activity proposed in a coastal site plan, the commission shall make a written finding that the proposed activity with any conditions or required modification (1) is consistent with all applicable goals and policies in Section 22a-92 of the General Statutes; and (2) incorporate as conditions or modifications all reasonable measures which would mitigate the adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities.

"(d) As a condition to a coastal site plan approval, the commission may require a bond or other surety or financial security arrangement to secure compliance with any modifications, conditions, or other terms stated in its approval of the plan. The bonding procedure shall follow section 17.3.2 hereof.

"(e) Any activity within the defined coastal area not exempt from coastal site plan review pursuant to section 3.21 hereof, which occurs without having received a lawful approval from the commission under all of the applicable procedures and criteria prescribed by this zoning ordinance or which violates the terms and conditions of such approval, shall be deemed a public

lished the criteria required for site plan approval. By ordinance, the city council also established the commission on the city plan as the body to examine the criteria and apply them to the individual applications.[7] In reviewing and approving site plans the commission acts in an administrative capacity. *Goldberg* v. *Zoning Commission*, 173 Conn. 23, 29, 376 A.2d 385 (1977). Fur-

nuisance and appropriate legal remedies will be taken by the commission for the abatement of such nuisance according to section 18.4 hereof.

"17.4.7 SOIL EROSION AND SEDIMENT CONTROL. A soil erosion and sediment control plan shall be submitted pursuant to section 3.22 with all site development plan applications when the disturbed area of such development is cumulatively more than one-half acre.

"17.4.8 CERTIFICATION. The commission shall certify that the soil erosion and sediment control plan as filed, complies with the requirements and objectives of this regulation or deny certification when the proposal does not comply with these regulations.

"17.4.9 MINIMUM ACCEPTABLE STANDARDS. Plans for soil erosion and sediment control shall be developed in accordance with these regulations using the principles as outlined in Chapters 3 and 4 of the Connecticut Guidelines for Soil Erosion and Sediment Control, as amended. Soil erosion and sediment control plans shall result in a development that: minimizes erosion and sedimentation during construction; is stabilized and protected from erosion when completed; and does not cause off-site erosion and/or sedimentation.

"The minimum standards for individual measures are those in the Connecticut Guidelines for Soil Erosion and Sediment Control, as amended. The commission may grant exceptions when requested by the applicant if technically sound reasons are presented.

"The appropriate method from Chapter 9 of the Connecticut Guidelines for Soil Erosion and Sediment Control, as amended, shall be used in determining peak flow rates and volumes of runoff unless an alternative method is approved by the commission."

[7] The defendant claims that the city council cannot enlarge upon the powers of the commission on the city plan by imposing upon it the additional function of reviewing site plans. In support of this argument, the defendant relies on the fact that General Statutes § 8-3 specifically provides for site plan approval and review, while the Norwich city charter is silent as to site plans. We are not persuaded that the defendant's argument sets forth any statutory or constitutional authority restricting the city council from delegating site plan approval to the commission on the city plan. The broad powers granted to the city council to govern land use encompasses the powers of enforcement and delegation.

thermore, in reviewing site plans the commission has "no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written." *Allied Plywood, Inc.* v. *Planning & Zoning Commission,* 2 Conn. App. 506, 512, 480 A.2d 584, cert. denied, 194 Conn. 808, 483 A.2d 612 (1984); *Kosinski* v. *Lawlor,* supra, 427. This delegation of power is consistent with the city council's power to provide, by ordinance, for the manner in which land use ordinances are enforced. We find that the delegation was proper.

Therefore, we affirm the decision of the Appellate Court on the basis of the plaintiff's alternate grounds for affirmance.

In this opinion the other justices concurred.