[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from a decision of the Commission's approval of a coastal site plan review application pursuant to 118-1110(B) of the Building Zone Regulations of the City of Norwalk. Section 118-1110 of the Norwalk Building Zone Regulations was adopted pursuant to the Coastal Area Management Act (hereinafter "CAM") General Statutes 22a-91 to 22a-112, specifically 22a-1-5(a) which provides that "[c]oastal municipalities may adopt a municipal coastal program for area CT Page 5019 within the coastal boundary and landward of the mean high water mark." "The Coastal Area Management Act delegates the administration of the state-wide policy of planned coastal development to local agencies charged with the responsibility for zoning and planning decisions." Vartuli v. Sotire, 192 Conn. 353,358, 472 A.2d 336 (1984). Therefore, General Statutes 8-8 which governs appeals from zoning commissions' decisions governs this appeal.
General Statutes 8-8(b) provides in pertinent part:
 any person aggrieved by any decision of a [zoning commission] may take an appeal to the superior court for the judicial district in which the municipality is located.
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Windsor Woods Associates v. Planning and Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991); Dibonaventure [Dibonaventura] v. ZBA, 24 Conn. App. 369, 373, 588 A.2d 244
(1991). An owner of the subject property is aggrieved and entitled to bring an appeal. See Bossert Corp. v. Norwalk, 157 Conn. 279, 285,253 A.2d 39 (1968).
The plaintiff has attached to his brief a copy of the deed to the subject property as Exhibit A-2. The plaintiff, as owner of the subject property, is aggrieved.
A party taking an appeal must do so by completing service of process within the fifteen days from the date that notice of the decision was published. General Statutes 8-8(b).
The defendant Commission published legal notice of its decision in The Hour, a daily newspaper published in Norwalk, on December 6, 1991. (ROR, 25). The plaintiff served the defendants on December 18, 1991. Because the plaintiff served the defendants within fifteen days from the time legal notice was published, the plaintiff's appeal is timely.
When the Commission acts upon a site plan application, it acts in its administrative capacity. Norwich v. Norwalk Vault Co.,208 Conn. 1, 12, 544 A.2d 152 (1988); Goldberg v. Zoning Commission,173 Conn. 23, 376, A.2d 385 (1977). Furthermore, in reviewing site plans, the Commission has "no independent discretion beyond determining whether the plan complies with the appropriate regulation. . . ." Allied Plywood Inc. v. Planning Zoning Commission, 2 Conn. App. 506, 512, 480 A.2d 584 (1984), cert. denied, 194 Conn. 808, 483 A.2d 612 (1984). "The Board is under mandate to apply the requirements of the regulations as written." Id., 512. CT Page 5020
The decision of the Commission must be sustained if any of the reasons given for it are valid. Goldberg v. Zoning Commission, supra, 26. The trial court may not substitute its judgment for that of the Commission. Frito Lay Inc. v. Planning and Zoning Commission, 206 Conn. 544, 572, 538 A.2d 1039 (1988). The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. Burnham v. Planning and Zoning Commission,176 Conn. 439, 376 A.2d 385 (1977).
This court may only reverse the Commission's decision if it finds that its actions were arbitrary, illegal, or an abuse of discretion. Frito Lay, supra, 573 (citations omitted).
I. Whether there is adequate support in the record to support the Commission's decision.
The plaintiff argues, in its supplemental brief, that the record does not support the Commission's decision to condition its approval because it is devoid of evidence of any adverse impact on future water-dependent development opportunities and activities. Furthermore, the plaintiff argues, the record does not support the conclusion that the property is suitable for water-dependent uses. Rather, continues the plaintiff, the record supports the proposition that, as it exists, the site is unsuitable for typical water-dependent uses.[1]
The Commission argues, in its post hearing brief, that the record reflects that the subject property is suitable for future water-dependent uses. The plaintiff's engineer testified, the Commission argues, that it is quite feasible to construct a bulkhead for the property and that the property can be dredged. Therefore, the Commission argues that subject property could be used for the same kinds of commercial buildings and other facilities which have already been constructed along the Norwalk river in the vicinity of the plaintiff's property. The owners of these properties the Commission argues have already constructed bike/walkways similar to the one which is the subject of this lawsuit. Therefore, the Commission argues, the record supports its conclusion that the site is suitable for water-dependent uses for which there is a reasonable demand.
In order to review the Commission's decision, it is first necessary to set out the relevant statutory provisions under which the Commission derived its authority to act in the instant case. Pursuant to CAM, the City of Norwalk promulgated regulations. Section 118-1110(15) provides that any use within a Coastal Zone must be reviewed and approved by the Commission. A person seeking approval for a use within the Coastal Zone must file a coastal site plan review application with the Zoning Inspector. Regulations CT Page 5021 118-1110(B)2. Section 118-1110(B)(2) provides that "all structures and uses in the Coastal Zone, unless exempt under 118-1110E, shall comply with coastal site plan review requirements in sections 22a-105 through 22a-109 of the Coastal Management Act, as amended, in addition to complying with the other requirements of these regulations."
General Statutes 22a-105(e) provides in relevant part:
 The board or commission reviewing the Coastal Site Plan shall. . .approve, modify, condition or deny the activity proposed in a coastal site plan on the basis of the criteria listed in Section 22a-106 to ensure that the potential adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities are acceptable.
General Statutes 22a-106(b) provides:
 In determining the acceptability of potential adverse impacts of the proposed activity described in the coastal site plan on both coastal resources and future water-dependent development opportunities a municipal board or commission shall:
 (1) consider the characteristics of the site, including the location and condition of any of the coastal resources defined in section 22a-93; (2) consider the potential effects, both beneficial and adverse, of the proposed activity on coastal resources and future water-dependent development opportunities and (3) follow all applicable goals and policies stated in section 22a-92 and identify conflicts between the proposed activity and any goal or policy.
The coastal site plan applicant must demonstrate that any adverse impacts are acceptable. General Statutes 22a-106(c). The Commission must state its findings and reasons in writing when deciding a site plan application. General Statutes 22a-106(d).
 In approving any activity proposed in a coast site plan, the municipal board or commission shall make a written finding that the proposed activity with any conditions or modifications imposed by the board: (1) Is consistent with all applicable goals and policies in section 22a-92; (2) incorporates as conditions or modifications all reasonable measures which would mitigate the adverse impacts of the proposed activity on both coastal resources and future water-dependent development activities. CT Page 5022
General Statutes 22a-106(e).
General Statutes 22a-93 sets out the definitions which are used under the Act. Section 22a-93(17) defines "[a]dverse impacts on future water-dependent development opportunities" and "adverse impacts on future water-dependent development activities" as follows:
 [these] include but are not limited to (a) locating a non-water-dependent use at a site that (i) is physically suited for a water-dependent use for which there is a reasonable demand or (ii) has been identified for a water-dependent use in the plan of development of the municipality or the zoning regulations; (B) replacement of a water-dependent use with a non-water dependent use, which would substantially reduce or inhibit existing public access to marine or tidal waters.
General Statutes 22a-93(16) defines "water-dependent uses" as follows:
 [T]hose uses and facilities which require direct access to, or location in, marine or tidal waters, and therefore cannot be located inland, including but not limited to: Marinas, recreational and commercial fishing and boating facilities, finfish and shell fish processing plants, waterfront dock and port facilities, shipyards and boat building facilities, water-based recreational uses, navigations aides, basins and channels, industrial uses dependent upon water-borne transportation or requiring large volumes of cooling or process water which cannot reasonably be located or operated at an inland site and uses which provide general public access to marine or tidal waters.
The Commission made a finding that "the potential adverse impact on future water-dependent development opportunities and activities is unacceptable as per C.G.S. 22a-106(a) and (b) as the site of the proposed non-water-dependent development is suitable for water-dependent opportunities. . . ." (ROR #34). The Commission also found that these "adverse impacts upon future water-dependent development" are unacceptable in that they conflict with the goals and policies of General Statutes 22a-92(a)(3).
The record is adequate to support the Commission's findings that the proposed use of the plaintiff's property has "adverse impacts upon future water-dependent development activities" as defined by General Statutes 22a-93(17)(A).
The DEP stated, in a letter to the Commission, that the CT Page 5023 proposed use was inconsistent with CAM as it is a non-water dependent use located at a site which is reasonably suited for water-dependent activities. (ROR 11). Specifically, the DEP notes that the site is especially suitable for public access to the Norwalk River. (ROR #34). The record also contains a letter submitted from Oyster Bend Yacht Club and Town Houses. (ROR 16). Oyster Bend abuts the plaintiff's property, and in the letter the abutter decries the proposed use as incompatible with the rest of the development in the area. (ROR #16). The abutter also explains that they were required to provide a public access easement even though their residential use is water-dependent. (ROR #16). Furthermore, the Commission lists properties in the area which reflects a general scheme of public access along the Norwalk river. (ROR #34, #37). Therefore, the record supports the Commission's decision that the adverse impacts of the proposed use are unacceptable.
General Statutes 22a-106(c) provides that the plaintiff "shall demonstrate that the adverse impacts of the proposed activity are acceptable and shall demonstrate that such activity is consistent with the goals and policies in Section 22a-92." The Commission found that the plaintiff failed to make these required demonstrations.
The plaintiff argues that the Commission has erroneously interpreted General Statutes 22a-92(a)(3). General Statutes 22a-93(a)(3) provides that one goal and policy of the Act is "[t]o give high priority and preference to uses and facilities which are dependent upon proximity to the water or shorelands immediately adjacent to marine and tidal waters." The plaintiff argues that this policy does not establish an outright ban on non-water dependent uses but merely establishes a preference for water dependent uses. The plaintiff's assertion does not demonstrate that the proposed use is "consistent" with the goals and policies of General Statutes 22a-92(a)(3) but only demonstrates that the proposed use is not necessarily inconsistent.
The record is devoid of any other attempt by the plaintiff to comply with General Statutes 22a-106(c) and therefore, the record supports the Commission's findings.
II. Whether the Commission acted beyond the scope of its authority.
The plaintiff argues in his supplemental brief that the action of the Commission rises to the level of a taking without compensation in violation of the federal constitution, relying on Nollan v. California Coastal Commission, 107 S.Ct. 3141 (1987), and the state constitution. The plaintiff further argues that the Commission acted beyond the scope of its authority, and therefore CT Page 5024 illegally, in conditioning the approval of the permit application on the grant of an easement.
One of the goals and policies set out under CAM is as follows:
 (6) To encourage public access to the waters of Long Island Sound by expansion, development, effective utilization of state owned recreational facilities within the coastal area that are consistent with the sound resource conservation procedure and constitutionally protected rights of property owners. . . .
General Statutes 22a-02(6).
Under General Statutes 22a-106(e), quoted above, and General Statutes 22a-92(6) the defendant Commission has the authority to condition its approval of a coastal site plan application as long as the condition would mitigate the adverse impacts the proposed activity would have on future water-dependent development activities and as long as such condition is constitutionally sound.
The plaintiff argues, in his brief, that the imposition of a condition requiring the grant of a public access easement is incompatible with the zoning designation of this property. The plaintiff's property is zoned for light industrial use and the plaintiff seeks approval to use his land in such a manner. Such a condition, argues the plaintiff, is illegal because it creates a dangerous situation, rather than promoting the safety and welfare of the general public which is the fundamental justification for zoning regulations.
The Commission argues, in its brief, that the condition will not create a dangerous situation and is reasonable because the plaintiff is not required to improve the easement until after the plaintiff terminates the temporary recycling use of its property. "[W]hat could have been more reasonable than requiring that the easement area not be improved until the plaintiff's self-proclaimed temporary recycling operation was terminated." [Defendant's brief filed June 10, 1991, at page 3]. (See ROR #9, Tr. p. 2).
The Commission acted illegally in conditioning the approval of the plaintiff's application upon the grant of a public access easement to be improved after the plaintiff finished using its property as a recycling operation. Such a condition is illegal because it does not mitigate the adverse impacts of the plaintiff's proposed activities. As stated in both parties briefs, the plaintiff will be allowed to us its property as a recycling operation and after the plaintiff is finished using the property in this manner, then the plaintiff will be required to improve the public access easement. The condition will not mitigate adverse CT Page 5025 impacts because at the time that it will be imposed, the plaintiff will be done using his property in the manner which the defendant Commission found caused adverse impacts, and at this time there could quite possible be no adverse impacts to mitigate.
The Commission is not authorized, in the instant case, to condition its approval of the plaintiff's site plan review application upon the grant of a public access easement because the condition does not mitigate adverse impacts as required under General Statutes 22a-106(e). Therefore the constitutional issues raised by the plaintiff need not be reached.
The defendant Commission acted illegally in conditioning the approval of the plaintiff's site plan review application upon the grant of a public access easement to be imposed after the plaintiff is done using the property for a recycling operation because such a condition does not mitigate the adverse impacts which the Commission concluded would be caused by the use.
The plaintiff urges this court, in his response to the defendant Department of Environmental Protection's brief, to declare the illegal condition null and void and let the approval of the site plan review application remain. In support of this contention, the plaintiff cites Beckish v. Planning Zoning Commission, 162 Conn. 11, 291 A.2d 208 (1971) where the court stated:
 the imposition of the void conditions does not necessarily render the whole decision illegal and inefficacious. If there are sufficient grounds to support the remaining action of the commission which is not contested by the parties, a modification of the decision may be decreed.
Id., 18.
The court held that since the illegal conditions
 "were not an essential or integral part of the permissible, required action of the defendant commission based on the application of the plaintiffs. . .; the contested conditions which were imposed are separate and distinct and can be severed from the action of the commission in granting the special permit."
Id., 19.
The Commission found that the plaintiff's proposed activity had adverse impacts on future water-dependent uses, and in order to mitigate such adverse impacts, conditioned its approval upon the grant of a public access easement. (ROR #34). CT Page 5026
Therefore, The Commission's decision to condition its approval of the plaintiff's coastal site plan review application on the grant of a public access easement was an essential component to its decision to approve the plaintiff's application. Accordingly the court reverses the Commission's decision.
SYLVESTER, J.
ENDNOTES