[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Elsie Scott ("Scott") appeals pursuant to General Statutes 8-8, in separate actions, from the decisions of defendant, Zoning Commission of the City of Derby, ("Commission") regarding property owned by defendant, International Real Estate Associates, L.P. ("International"). In the first case, Scott appeals the decision issued by the Commission on December 15, 1992, granting a special exception use (hereinafter "Special Exception Use Appeal"). In the second case, Scott appeals the decision issued by the Commission on March 16, 1993, granting site plan approval (hereinafter "Site Approval Appeal").
Notice of the Commission's decision was published on December 21, 1992. (Return of Record, Special Exception Use Appeal [ROR #1"], Item j). The plaintiff served the Commission on December 31, 1992, by leaving the appeal papers with the city CT Page 2242 clerk at the clerk's office, the Commission clerk at the Commission's office, and the Commission chairman at the Commission's office. (Sheriff's Return). The plaintiff served International on December 31, 1992, by serving process upon William B. Leroy, Agent for Service, Auguste-Thouard Corporation. (Sheriff's Return). The Special Exception Use Appeal was filed with the superior court on January 8, 1993. On March 12, 1993, International filed an answer. On June 10, 1993, the Commission filed an answer and return of record. The appeal was heard by the court (Mancini, J.) on December 9, 1993. At the hearing, all parties stipulated that Scott's Special Exception Use appeal should be sustained on the ground that the decision granting International's application for a special exception use is a nullity because the Derby zoning ordinance does not provide for this special exception use in an I-1 zone. (See transcript of hearing before the court dated December 9, 1993 (Mancini, J.). Accordingly, the court sustains Scott's Special Exception Use Appeal in accordance with the parties' stipulation. Therefore, this memorandum will only address the Site Approval appeal.
Notice of the Commission's decision was published on March 27, 1993 (Return of Record, Site Approval Appeal, [ROR #2] Item j). The plaintiff served the Commission on April 7, 1993, by leaving the appeal papers with the city clerk at the clerk's office and the Commission clerk at the Commission's office. (Sheriff's Return). The plaintiff served International on April 7, 1993, by serving process upon William B. Leroy, Agent for Service, August-Thouard Corporation. (Sheriff's Return). The Site Approval Appeal was filed with the superior court on April 16 1993. On June 1 1993, International filed an answer. On June 18, 1993, the Commission filed an answer and return of record. On November 29, 1993, the Commission filed a Supplemental Return of Record. The appeal was heard by the court (Mancini, J.) on December 9, 1993.
International filed an application for special exception uses with the Commission in two phases regarding property it owns located at the intersection of Pershing Drive and Division Street in Derby, Connecticut. (ROR #1, Item a). The application requested approval for a special exception to utilize the property as a shopping center (Phase I) with a wholesale/retail business located within the shopping center (Phase II) (hereinafter "retail center"). (ROR # 1, Item a.). The retail center is located in an I-1 (General Industry) zone. CT Page 2243 (Supp. ROR, zoning map of the City of Derby). Phase I of the application was approved on July 21, 1992. (ROR #1, Item g, p. 2). Phase II of the application was approved on December 15, 1992, and the Commission duly published notice of the decision on December 21, 1992. (ROR #1, Item j.). A traffic study for the proposed retail center was prepared in October, 1992. (ROR #2, Item h). The State Traffic Commission issued a traffic certificate for the retail center to International on January 26, 1993, conditional upon the making of certain improvements upon the property as set forth in the certificate. (ROR #2, Item i).
On January 29, 1993, International filed an application for approval of a revised site plan. (ROR #2, Item a). The revised site plan proposed the following:
 1) Shopping center consisting of eight business establishments, of which one has an area of at least 10,000 square feet;
 2) Building containing 86,685 square feet of space;
 3) Parking provided for 364 spaces with the possibility of 369 spaces;
4) Four loading spaces
(ROR #2, Item a). The major tenant in the site plan is Wholesale Depot, with 60,000 square feet. (ROR #2, Item a). A hearing was held on the application for site plan approval on February 16, 1993. (ROR #1, Item k). The Commission granted approval of the site plan on March 16, 1993, and duly published notice of the decision on March 27, 1993. (ROR #1, Item 1).
At the hearing, this court (Mancini, J.), found that the plaintiff is the owner of land abutting that owned by International and therefore that she is aggrieved by the Commission's decision in both the Special Exception Uses Appeal and the Site Approval Appeal.
General Statutes 8-8(b) requires the appeal to be served on the agency and the municipality within fifteen days from the publication of the notice of the board's decision. CT Page 2244
The final decision of the Commission in the Special Exception Use Appeal, dated December 15, 1992, was duly published on December 21, 1992. The plaintiff served the Commission and the City of Derby on December 31, 1992, and filed the Special Exception Use Appeal on January 8, 1993.
The final decision of the Commission in the Site Approval Appeal, dated March 16, 1993, was duly published on March 27, 1993. The plaintiff served the Commission and the City of Derby on April 7, 1993, and filed the Site Approval Appeal on April 16, 1993. The court finds that both appeals were served within the fifteen day period required by General Statutes 8-8 (b), and thus, the appeals are timely.
A trial court may not substitute its judgment for that of the administrative tribunal. Frito-Lay, Inc. v. Planning and Zoning Commission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." Primerica v. Planning Zoning Commission, 211 Conn. 85, 96,558 A.2d 646 (1989). The trial court can sustain a plaintiff's appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal. Schwartz v. Planning and Zoning Commission, 208 Conn. 146, 152,542 A.2d 1339 (1988). "The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts." Pascale v. Board of Zoning Appeals, 150 Conn. 113, 117, 186 A.2d 377 (1962). "It is only where the local zoning authority has acted arbitrarily or illegally and thus abused the discretion vested in it that the courts can grant relief on appeal." McCrann v. Town Plan 
Zoning Commission, 161 Conn. 65, 71, 282 A.2d 900 (1971). "The burden of proof is on the plaintiff to demonstrate that the [commission] acted improperly." Spero v. Zoning Board of Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991).
"In reviewing and approving site plans the commission acts in an administrative capacity." Norwich v. Norwalk Wilbert Vault Co., 208 Conn. 1, 12, 544 A.2d 152 (1988). "[I]n reviewing site plans the commission has no independent discretion beyond determining whether the plan complies with the applicable regulations . . . [and] is under a mandate to apply the requirements of the regulations as written." (Citations omitted.) Id., 13. "The test for review of commission administrative proceedings is whether the assigned grounds are CT Page 2245 reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citations omitted.) Marmah, Inc. v. Greenwich, 176 Conn. 116, 118, 405 A.2d 63
(1978).
In her brief in support of the Site Approval Appeal, the plaintiff argues that the Commission's decision was illegal in the following ways:
 1) The Commission's decision violates 25-9(b)(14) of the Derby zoning ordinance because the number of proposed parking spaces does not conform or satisfy the requirements therein;
 2) The Commission's decision violates 25-13
of the Derby zoning ordinance because the Commission failed to determine that there is appropriate provision for vehicular access to and circulation upon the lot.
The plaintiff relies on Section 25-9 (b)(14) of the Derby zoning ordinance in support of her argument that the number of proposed parking spaces contained in International's site plan does not conform to the requirements under that section. The plaintiff argues that International's proposed shopping center consists of 86,685 square feet of retail space, thus requiring 433 parking spaces under section 25-9 (b)(14), and that International's application, consisting of only 364 parking spaces, violates that section. In its brief, the Commission maintains that International's application consisted of a use by Wholesale Depot of 60,000 square feet as a mixed use of the district, rather than a retail use, and thus, section25-9 (b) (18) of the Derby zoning ordinance controls the parking requirements for the portion of the district used by Wholesale Depot.
Section 25-9, of the Derby zoning ordinance sets out 18, different minimum parking space requirements for buildings, structures or uses of land in a given district. (Supp. ROR,25-9 (b)(1)-(18)). Section 25-9 (b)(9) of the Derby zoning ordinance applies to parking facilities in connection with an applicant's use of a district as a manufacturing, industrial, or wholesale establishment and sets a minimum parking requirement CT Page 2246 as follows:
 One parking space for each three employees customarily employed at one time for each five hundred square feet of floor area, whichever is greater.
(Emphasis added.) Supp. ROR, 25-9 (b) (14)). Section25-9 (b) (14) of the Derby zoning ordinance applies to parking facilities in connection with an applicant's use of a district as a retail store, personal service store or studio shop for custom work. That section provides that;
 [i]n all districts the minimum required number of parking spaces to be provided in private garages or private parking areas accessory to main buildings or structures or uses of land permitted in any given district shall be . . . one parking space for each two hundred square feet of floor area above the first floor.
Section 25-9 (b) (18) of the Derby zoning ordinance applies to parking facilities in connection with an applicant's mixed use of a district. That section provides that the "[t]otal requirement shall be the sum of the requirements of the component uses computed separately." (Supp. ROR,25-9 (b)(18)).
The record supports a finding that International's use of the district by Wholesale Depot is a mixed use. (ROR #2, Item a). As part of its application, International submitted a composite outlining the square footage of each use of the district within the proposed retail center and the corresponding parking requirements. (ROR #2, Item a). The transcript of the meeting illustrates that International's attorney also referred to this composite at the meeting, stating that;
 [y]ou'll notice that it's very very specifically spelled out, the retail is 23,185 [square feet], at five [spaces] per one thousand is 116 spaces. The tire center is 3,500 [square feet], that's not exactly right, it's a tiny bit less than that, and that's two [spaces] per thousand and that's seven spaces allotted. Here we have 40,000 square feet which is the Wholesale Depot retail, so there's CT Page 2247 five [spaces], we can see five there, for 200 spaces. And then we have the Wholesale Depot wholesale section, 20,000 square feet at two [spaces] per thousand square feet, for 40.
(ROR #1, Item k, p. 14) In addition, this composite contained a description of Wholesale Depot as follows:
 Wholesale Depot sells merchandise at wholesale and retail. They estimate that 33-45% of their sales are wholesale. The aisles of Wholesale Depot are wider than the aisles at any supermarket or retail establishment in that the shelves are loaded by forklifts rather than manually. They sell and stock a substantially lower number of items than retail establishments. Wholesale Depot has hours from 9:00 a.m. to 11:00 a.m. five days a week strictly for businesses and not [retail] members. This is a membership club only. Therefore, the use by Wholesale Depot is a mixed us and the guidelines of Section 25-9 (b)18 of the zoning regulations provide that `total parking for a mixed use shall be the same as the requirement of the component uses compiled and computed separately.'
(ROR #2, Item a.)
In the transcript of the February 16, 1993 meeting, at which the Commission considered International's site plan approval application, the attorney for International stated
 there is a two hour period set aside in stores of this type, and in the Wholesale Depot store specifically, nine in the morning until eleven in the morning is strictly for wholesale purchasing. Strictly wholesalers who come in, people who own retail stores and go back and sell these products in other places. So even though the regular hours are devoted to people who are retail/wholesale combined, you still should be giving some consideration or credit to the fact that for a portion of the day the wholesalers are the only ones who can get in here to purchase.
(ROR #1, Item k, p. 14). Furthermore, International's attorney CT Page 2248 stated
 the amount of [wholesale Depot] that's devoted to retail is about 40,000 square feet in a store this size. . . . The wholesale is 20,000 square feet, so that's exactly one-third. . . . We are asking you to accept the four categories. . . The first being wholesale, which is described as one parking space for each three employees customarily employed at one time or for each 500 square feet of floor area, whichever is greater. . . . Retail, one space for each 200 square feet or five spaces per a thousand. . . . And then more specifically, mixed uses, which is what we're really requesting here, a mixed use where you take the percentage, figure them out and add whatever the total is going to be for the entire facility.
(ROR #1, Item k, p. 14).
The distinction between a "retail" use and a "wholesale" use of a building or structure is not set out in the Derby zoning ordinance. The zoning ordinance does not define either use (see Sup. ROR, 25-4); or provide specifications for either use. (See Supp. ROR, 25-1 et seq.). Whether a proposed use of a district is a retail or wholesale use is a question of fact for the Commission to determine. "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substantiate its own judgment for that of the zoning authority so long as it reflects an honest judgment reasonably exercised." Oakwood Development Corporation v. Zoning Board of Appeals, 20 Conn. App. 458, 460,567 A.2d 1260 cert. denied, 215 Conn. 808, 576 A.2d 588 (1990). The Commission did not specifically determine that the proposed use by Wholesale Depot was a "mixed" use rather than a "retail" use. (Transcript of February 16, 1993 Meeting ROR #1, Item k). Nevertheless, in approving International's application providing for 364 parking spaces, the Commission implicitly determined that it was a mixed use rather than a retail use. The court finds that this determination was reasonable under the circumstances. Parking required for a mixed use of a district, is explicitly provided for under the ordinance. (Supp. ROR,25-9 (b) (18)).
International's site plan, containing 364 parking spaces, CT Page 2249 satisfies the requirements of Section 25-9 (b)(18) of the Derby zoning ordinance. Evidence contained in the record illustrates the following: the proposed retail center is to occupy 23,185 square feet of retail space use, requiring 116 parking spaces under 25-9 (b)(14) of the Derby zoning ordinance; 60,000 square feet of mixed use by Wholesale Depot (49,000 square feet of retail space use and 20,000 square feet of wholesale space use), requiring 200 parking spaces under 25-9 (b)(9), respectively; and 3,500 square feet of wholesale space use by the tire center, requiring 7 parking spaces under 25-9 (b)(9); for a total number of parking spaces of 363. (ROR #1, Item a; Item k, p. 12). The Commission did not act illegally, arbitrarily or in abuse of its discretion in approving the proposed parking as contained in International's site approval application.
The plaintiffs next argues that the Commission's decision violates Section 25-13 of the Derby zoning ordinance because the Commission failed to determine that there is appropriate provision for vehicular access to the lot in such a manner as to avoid undue hazards to traffic and undue traffic congestion any public highway. Section 25-13 (d) of the Derby zoning ordinance provides in relevant part:
 The Commission shall approve the Application and Site Plan, or approve subject to modifications, when the Commission determines that all of the General Standards and any applicable Special Standards hereinafter specified have been met; otherwise the Commission shall disapprove the application.
(Supp. ROR, 25-13 (d)). General Standards which must be met regarding vehicular access and circulation in connection with the submission and administrative approval of a site plan include:
 Provision . . . made for vehicular access to the lot and circulation upon the lot in such a manner as to safeguard against hazards to traffic and pedestrians in the street and upon the lot, to avoid traffic congestion on any street and to provide safe and convenient circulation upon the lot.
(Supp. ROR, 25-13 (e)(4)). CT Page 2250
The record reveals that the State Traffic Commission issued a certificate for the retail center conditional upon compliance with certain requirements as set forth in an attached traffic investigation report. (ROR #2, Item i). The traffic investigation report recommended the issuance of the traffic certificate and provided that the operation of the retail center "will not imperil the safety of the public" upon the fulfillment of certain conditions. (ROR #2, Item i). The Commission heard testimony from a professional engineer that modifications to the roadway plan and revisions to the site plan were made by International in order to comply with the conditions outlined in the traffic investigation report. (ROR #1, Item K, p. 16-19). No evidence was presented which contradicts the engineer's testimony nor contradicts the traffic investigation report. (ROR #1, Item k). The transcript reveals only that the plaintiff hired a traffic expert who concurred with the report of the State Traffic Commission. (ROR #1, Item k, p. 31). "[T]he accuracy and credibility received by an administrative agency is peculiarly within the province of the agency." Manchester Environmental Coalition v. Planning and Zoning Commission, 41 Conn. Sup. 184, 187, 564 A.2d 639 (Aronson, J., 1989).
The plaintiff claims in her brief that the Commission failed to follow section 25-13 of the Derby zoning ordinance but has failed to provide any evidence to support her position. While the Commission did not make a specific finding on the issue, the record contains evidence which could support such a finding. Therefore, in approving International's application, the Commission implicitly determined that the appropriate provision for vehicular access to and circulation upon the lot had been provided for in accordance with section 25-13 (e).
Based on the foregoing, the approval by the Commission of International's site plan is reasonably supported by the record. Accordingly, the appeal is hereby dismissed.
BY THE COURT,
Philip E. Mancini, Jr. State Trial Referee CT Page 2251